UNITED STATES, Appellee,

v.

**Wayne E. BURTON, Staff Sergeant, U.S. Marine Corps, Appellant.**

No. 99–0242.
Crim.App. No. 98–0805.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 27, 1999.

Decided Jan. 21, 2000.

GIERKE, J., delivered the opinion of the Court, in which CRAWFORD, C.J., SULLIVAN and EFFRON, JJ., and COX, S.J., joined.

For Appellant: *Major John F. Kennedy*, USMCR (argued); *Lieutenant Commander Rebecca L. Gilchrist*, JAGC, USN.

For Appellee: *Lieutenant D.L. Walker*, JAGC, USN (argued); *Commander Eugene E. Irvin*, JAGC, USN, *Colonel Kevin M. Sandkuhler*, USMC, and *Lieutenant James E. Grimes*, JAGC, USNR (on brief).

Judge GIERKE delivered the opinion of the Court.

A military judge sitting as a special court-martial convicted appellant, pursuant to his pleas, of wrongfully using cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. The adjudged and approved sentence provides for a bad-

conduct discharge, confinement for 30 days, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

This Court granted review of the following issue:

WHETHER THE MILITARY JUDGE WAS IMPROPERLY PREDISPOSED TO ADJUDGE A PUNITIVE DISCHARGE AND SHOULD HAVE DISQUALIFIED HIMSELF PURSUANT TO RCM 902(a).

For the reasons set out below, we affirm.

### Factual Background

The offense occurred while appellant was playing cards and drinking alcoholic beverages with three other individuals. One person produced a package of cocaine and passed it around. Appellant ingested a portion of it by snorting it into his nose. The cocaine was later detected in appellant's urine.

During the sentencing hearing, appellant produced evidence that he had more than 10 years of service with no disciplinary history. He had been awarded the Good Conduct Medal with two stars, and numerous service medals and ribbons. He participated in Operation Desert Shield. His fitness reports consistently rated his overall value to the service as outstanding.

Staff Sergeant Harrison testified for the defense. He described appellant as "squared away and motivated." He was shocked when appellant tested positive for using drugs. Finally, he testified that he believed appellant could learn from his mistakes and had rehabilitative potential.

Gunnery Sergeant (GSgt) Walden, appellant's supervisor, testified on appellant's behalf. He rated appellant's character as "outstanding." He testified that he was "kinda devastated" when appellant tested positive for drugs. Finally, he testified that appellant was a person who could learn from his mistakes, and that there was a place for him in the Marine Corps.

The military judge asked GSgt Walden if noncommissioned officers (NCOs) should be held to higher standards than other enlisted Marines. GSgt Walden opined that NCOs should be punished a little more severely for drug offenses than younger, less-experienced Marines.

Appellant testified under oath on sentencing. He described his family upbringing before he joined the Marine Corps and outlined his military career. He testified that he had been married for about 10 years, but had recently separated after an unsuccessful attempt at counseling. He testified that his drinking increased after the separation, and he was recently diagnosed as "alcohol dependent."

Appellant testified that he felt ashamed. He recognized that his chances of being allowed to reenlist were "slim." He recognized that there was no future for him in the Marine Corps, but he expressed hope that he would leave without "the stigmatism of this one mistake staying with me the rest of my life." Finally, he told the military judge that he was willing to pay for his mistake, but he asked the court to spare his wife from financial hardship.

On cross-examination, appellant testified that, as a Marine Corps "career planner," he had counseled "three, four hundred Marines" about their careers and had told them that using drugs was a "disqualifying factor." He testified that staff NCOs in the Marine Corps are held to a higher standard than lower-ranking Marines. He also testified that he worked at the Camp Lejeune brig as a "corrections person," where he saw Marines "get in trouble."

The military judge followed up on appellant's testimony that he had worked as a corrections NCO in the Camp Lejeune brig. The military judge's questions included the following:

Q. Working [in the brig], you would have seen a lot of young PFCs and Lance Corporals; single "Spec" use of cocaine; awarded Bad Conduct Discharges; serving periods of 30 days to 90 days' confinement before they're kicked out. Did you see that?

A. Yes, sir.

Q. Those are the PFCs and the Lance Corporals, the real worker bees in this Marine Corps; the things—the individuals in this Marine Corps that we're all about; us officers, us Staff NCOs, we're not what the Marine Corps is about; they are. But, like me, have you seen them sacrificed with a snap of a finger for the use of cocaine?

A. Yes I have, sir.

Q. How do you reconcile that this court should give you any leniency whatsoever, as a Staff noncommissioned officer, with a communication background, which means you have to have a clearance, which means you know drug use voids your clearance; with a corrections background, which means you have the opportunity to shut the door, to put the shackles on, to usher around the Brig, those people who could not conform their conduct to society and the Marine Corps' standards; as a career planner, who has the opportunity to make decisions, or assist young people in making decisions, that affect their whole life, knowing that drug use is a disqualifying and/or key factor, why do you deserve any leniency? Why do you deserve anything other than harsh, swift punishment which we would give any PFC or Lance Corporal who used, one time, cocaine?

A. Sir, within my almost 11 years in, I think I served the Marine Corps honestly, faithfully, and to the best of my ability. Due to bad judgment on my part, on one single occasion, I did falter, but I believe the time I've put in, the people I've trained, the people I've helped, the things I have done in the Marine Corps, should help outweigh the one mistake that I did make, sir.

    \*     \*     \*     \*     \*     \*

Q. You don't think that if this court's lenient there's not going to be Lance Corporals and PFCs out there that go, "See, look at the system. They say they're accountable, they say they're responsible, but those Staff NCOs; those officers; different standard."

A. No, sir.

Q. You don't believe that's going to be a problem?

A. No, sir, I don't; I don't believe so. Sir, I know I have to be punished, and I truly believe I should be punished. It's just the severity of the punishment is what, is what I'm actually looking at; what I'm looking at. You just said that I have two Honorable Discharges, and that can't be taken away from me, but the severity of a Bad Conduct Discharge for one, for one mistake in this enlistment, whereas, all the people that I did help, that I did train, that I did something for this enlistment, for the one night, the one mistake, to throw it—for it to be—to say everything I've done in this enlistment is null and void on that, on that one night, for that one night, in my personal opinion, sir, I believe it's harsh. I may be wrong, but I believe it's harsh, because I, I have served the Marine Corps for many years faithfully. I served, I served the people under me and I trained a lot of people, and I'm looking to be, looking for that to work in my benefit, sir.

MJ: I understand that, Staff Sergeant. However, I also view a 35–year–old man, soon to be 36, not the foolish, carefree teen-ager of the PFCs and Lance Corporals; not someone who is unwise as to the Marine Corps standards. As a matter of fact, you sit here probably with more knowledge of the Marine Corps' enforcement of those standards than the average Marine Staff NCO, having served in the Brig. So, what is a small mistake to the young, 19–year–old, 18–year–old Lance Corporal, PFC, six months, a year in the Marine Corps, out with the boys, kicking his heels up, sowing his wild oats, or whatever, you don't fall into that same niche. You're qualitatively different. You knew better. You sat at the table. You watched one person snort cocaine. You had to have something going through your mind. It's passed to the second man. You watched him snort the cocaine. By now you've got to have the anxiety. "Am I going to do it, or am I not?" It goes to a third individual, and he snorted the cocaine, and now it's time for that decision, and with all you knew, your worldly experiences up to that

moment in your life, you made the decision, and it was a very bad decision. Do you agree?

A. Yes, sir.

After concluding his questioning of appellant, the military judge asked the defense if they had any questions in light of his questions, and defense counsel responded in the negative. The military judge then asked, "Anything further from the defense?" Defense counsel responded, "Defense rests."

### Discussion

Appellant contends that the military judge's questions reflected a predisposition to impose a punitive discharge for a single drug use. He asserts that this predisposition disqualified the military judge from presiding at the court-martial and imposing a sentence.

The Government argues that the military judge's questions did not reflect a predisposition to impose a punitive discharge, but merely were an attempt to give appellant an opportunity to explain himself.

■ Military judges must disqualify themselves if their "impartiality might reasonably be questioned," or if they have "a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts." RCM 902(a) and (b)(1), Manual for Courts–Martial, United States (1995 ed.) (see 52 MJ at 11 n.*). In order to be disqualifying, any interest or bias must be "personal, not judicial, in nature." Drafters' Analysis of RCM 902(b), Manual, supra at A21–49, citing Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921); United States v. Azhocar, 581 F.2d 735 (9th Cir. 1978); United States v. Lewis, 6 MJ 43 (CMA 1978). A military judge has wide latitude to ask questions of witnesses. United States v. Acosta, 49 MJ 14, 17 (1998). However, "a military judge must not become an advocate for a party but must vigilantly remain impartial during the trial." United States v. Ramos, 42 MJ 392, 396 (1995). While military judges are obliged to disqualify themselves when they lack impartiality, they are equally obliged not to disqualify themselves when there is no reasonable basis for doing so. See United States v. Kincheloe,

14 MJ 40, 50 n. 14 (CMA 1982). Failure of the defense to challenge the impartiality of a military judge may permit an inference that the defense believed the military judge remained impartial. United States v. Hill, 45 MJ 245, 249 (1996).

■ When a military judge's impartiality is challenged on appeal, the test is "whether, 'taken as a whole in the context of this trial,' a court-martial's 'legality, fairness, and impartiality' were put into doubt by the military judge's questions." Ramos, supra at 396, quoting United States v. Reynolds, 24 MJ 261, 265 (CMA 1987). The test is objective, judged from the standpoint of a reasonable person observing the proceedings. Ramos, supra at 396. Our standard of review is abuse of discretion. United States v. Rivers, 49 MJ 434, 444 (1998).

■ In the context of member disqualification, our Court has observed that "[a]n inflexible member is disqualified; a tough member is not." United States v. Schlamer, 52 MJ 80, 93 (1999). When a military judge is the sentencing authority, the same standard applies: a biased or inflexible judge is disqualified; a tough judge is not.

■ Applying the above principles to this case, we hold that the military judge was not disqualified. Appellant requested a bench trial, knowing the identity of the military judge. At no time did the defense object to the military judge's questioning. The military judge's questions reflected his judicial sentencing philosophy and not any personal bias against appellant.

Since appellant had asserted that his years of service entitled him to leniency, it was not improper for the military judge to ask him why his experience, training, and background did not make him more aware of the consequences of his misconduct. It also was not improper for the military judge to ask him why he thought he could be given leniency without imposing a double standard, one for NCOs and another for low-ranking Marines.

None of the military judge's questions reflect an inflexible predisposition to impose a bad-conduct discharge. The military judge imposed only 30 days' confinement, well be-

low the jurisdictional limit of the court-martial and the maximum punishment for the offense.

We conclude that a reasonable person observing this court-martial would not doubt the military judge's impartiality. Accordingly, we hold that the military judge did not abuse his discretion.

### Decision

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.