# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, K.M. MCDONALD, D.C. KING**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

**v.**

**DAVID C. STREET**
**SERGEANT (E-5), U.S. MARINE CORPS**

**NMCCA 201300470**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 14 August 2013.
**Military Judge:** LtCol Chris Thielemann, USMC.
**Convening Authority:** Commanding General, 3d Marine Aircraft Wing, Marine Corps Air Station Miramar, San Diego, CA.
**Staff Judge Advocate's Recommendation:** Col K.C. Harris, USMC.
**For Appellant:** Capt David Peters, USMC.
**For Appellee:** Maj Crista D. Kraics, USMC.

**15 January 2015**

---------------------------------------------------------
## OPINION OF THE COURT
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge, sitting as a general court-martial, convicted the appellant, consistent with his pleas, of five specifications of violating lawful general orders prohibiting fraternization, providing alcohol to minors, and sexual harassment, one specification of abusive sexual contact, and one specification of obstruction of justice in violation of Articles 92, 120, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 920, and 934. The military judge convicted the appellant, contrary to his pleas, of two specifications of

forcible sodomy in violation of Article 125, UCMJ, 10 U.S.C. § 925. The military judge sentenced the appellant to reduction to pay grade E-1, confinement for ten years, and a dishonorable discharge. The convening authority approved the adjudged sentence, but suspended all confinement in excess of twenty-four months in accordance with a pretrial agreement, and, except for the punitive discharge, ordered it executed.

The appellant avers that his forcible sodomy convictions are legally and factually insufficient and that the military judge was biased.[1]

After reviewing the record of trial and the pleadings of the parties, we find partial merit in the appellant's claim of factual sufficiency as it relates to one of his forcible sodomy convictions. After taking corrective action in our decretal paragraph and reassessing the sentence, we conclude that the remaining findings and the reassessed sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant remains. Arts. 59(a) and 66(c), UCMJ.

## Background

The offenses at issue in this case stem from the appellant's interactions over two evenings with different junior Marines. The appellant was a 32-year-old Marine corporal when

---

[1] The appellant raises the following Assignments of Error (AOE):

I – At court-martial the Government must prove every element beyond a reasonable doubt. Here, the military judge convicted [the appellant] of sodomizing DR by force and without consent, despite hearing evidence that DR consented to the sexual contact. Is [the appellant's] conviction for the sole specification of Additional Charge V legally and factually sufficient?

II – Is [the appellant's] conviction for Specification 4 of Additional Charge III legally and factually sufficient?

III – An accused is entitled to an impartial military judge at court-martial. Here the military judge expressed disgust with [the appellant's] defense throughout the trial. He then awarded a sentence that included a dishonorable discharge and ten years of confinement. Was the military judge actually biased against [the appellant].

AOEs II and III were raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

he first met Lance Corporal (LCpl) DR[2] and LCpl BH as they each checked into the same unit as the appellant.

*LCpl BH*

In late October 2008, LCpl BH attended a party at the appellant's house during which LCpl BH consumed a large quantity of alcohol, describing his level of intoxication that evening as a "ten out of ten."[3]  On direct examination, LCpl BH testified that he blacked out and awoke the next morning in the appellant's bed.  LCpl BH then testified as follows:

Q: Okay.  And describe then the circumstances of your waking up.
A: I woke up pretty early.  The sun was just coming up.  Wasn't sure – I'm not going to say, you know, the exact time; but I would say anywhere from 6:00 to 7:00a.m.  I woke up in my boxers.  No idea why I was just wearing my boxers.  I usually, you know, I usually don't do that at someone else's house.  I never do that.  But I woke up feeling really, really weird.  I didn't want to say anything because I didn't want it to be awkward.  I wake up to [the appellant].  I don't want to say anything – I don't want to say he said anything; but, you know, he was just asking me how I felt and everything.  He was the only one there.  There was nobody – there was no cars or anything at the house.  It was just me and him.  I felt just crazy awkward there.  I didn't – I really didn't want to spend any more time than I had to be there sir.

. . . .

Q: Sure.  [The appellant] ever tell you anything that had happened that night?
A: He never said anything about that.  Pretty much I – you know, as a Marine, I had my pride.  I didn't say anything.  And he never said anything about the night to me that would make it awkward.  We still had a, you know, not a relationship, but a job, you know.  We still functioned properly at work.  We never had any issues.  There was no awkward times

---

[2] LCpl DR was already discharged from the Marine Corps by the time this case went to trial.

[3] Record at 383.

> or anything where it would cause an issue at work.
> But, yeah, I will always remember that night.
>
> Q: Sure. You said you had a weird feeling when you
>    woke up in the morning. Can you describe that for
>    us?
> A: It was kind of like I – I had like a bad feeling
>    where something unwanted happened. Whether I
>    dreamed it, whether it happened in real life,
>    whether I was going in and out, I have no idea.
>    But I just – it was just a really bad feeling that
>    somebody had done something that I didn't want.
>
> Q: Had done what?
> A: Forced himself on me, sir.
>
> Q: You felt like [the appellant] had forced himself on
>    you?
> A: Yes, sir.[4]

LCpl BH provided no further clarification on direct examination.
On cross-examination LCpl BH testified to the following:

> Q: [The appellant] wasn't in the room when you woke
>    up; correct?
> A: No, sir. It was just me alone in the bed
>
> Q: You didn't have any indication that you had
>    participated in any sort of sexual activity?
> A: Not that I can recall, sir. I did have, like I said,
>    like, bad dreams or whatever. I don't know if it was me
>    going in and out of the drunkenness; but it – I want to
>    say this the right way, sir. It did seem to me like,
>    you know, I was taken advantage of.[5]

On redirect examination, LCpl BH testified as follows:

> Q: In fact this, today, is the first time you've ever
>    admitted to anybody what you thought that weird
>    feeling meant; is that right?
> A: Yes, sir.
>
> Q: Okay. Was it hard to admit?

---

[4] *Id.* at 386-88.

[5] *Id.* at 391.

4

A: It's really hard, sir.

Q: It's hard – was it a hard thing to come to grips with at the time?
A: Yes, sir.

. . . .

Q: Did you have that same feeling all along from the time that you woke up that morning?
A: Yes, sir.  It's been on my mind.  If I'm going to say, I'm going to say it today.

Q: Then say for us today what it is that you believe happened to you that night?
A: It's hard for me to say as a Marine, as a man; but I do recall [the appellant] doing oral sex with me just – I couldn't do anything.  I just saw it.  And I remember him getting on top of me and trying to have sex.  And I don't know why I couldn't do anything.  I just – it just happened, sir.[6]

Additionally, the Government called Sergeant (Sgt) A as a witness and he testified that, along with LCpl BH and the appellant, he attended a Halloween party at a fellow Marine's off base residence in late October 2008.  Sgt A further testified that a couple of days after the party, the appellant told him that he took LCpl BH back to his house after the Halloween party and performed oral sex on him while LCpl BH was passed out that night.[7]

### LCpl DR

LCpl DR testified that he struck up a friendship with the appellant shortly after checking into the unit in August of 2008.[8]  He indicated that he and the appellant "hung out a lot", "talked a lot", "[would] go out with friends to bars", and were "[r]eally good friends."[9]  LCpl DR further testified that one day in early 2009, he went to the appellant's house to hang out

---

[6] *Id.* at 393-94

[7] *Id.* at 315.

[8] *Id.* at 357.

[9] *Id.*

5

and drink alcohol.[10]  That evening, LCpl DR and the appellant split a bottle of rum, mixing it with soda, and LCpl DR indicated that the appellant had about four drinks from the bottle and he drank most of the rest of the bottle, and became intoxicated.  He further stated he was in no condition to drive.[11]

LCpl DR testified that shortly after smoking a cigarette that evening he became dizzy, experienced blurry vision, and had difficulty moving around.[12]  LCpl DR stated that his memory of what happened next was hazy, but the next distinct memory he had was the appellant performing "oral sex" on him.[13]  According to LCpl DR, he was standing up in the appellant's bedroom for 3-4 minutes while the appellant performed oral sex on him.[14]  LCpl DR testified that he was "barely conscious" during this act, but stated during cross-examination that he thought he was capable of saying the word "no" and capable of stepping back from the appellant.[15]  He further testified that it was possible that he flirted with the appellant that evening and he was not sure whether he consented to the sexual activity.[16]

LCpl DR testified that his memory then faded out and he next awakened in the morning to the appellant performing "oral sex" on him again while he was in the appellant's bed.[17]  LCpl DR felt a "horrible hangover" and asked the appellant to stop, and the appellant complied.[18]

---

[10] *Id.*

[11] *Id.* at 358-60.

[12] *Id.* at 362.

[13] *Id.* at 362-63.

[14] *Id.* at 371, 379.

[15] *Id.* at 371-372.

[16] *Id.* at 373-74.

[17] *Id.* at 363.

[18] *Id.* at 363-64.

**Discussion**

*Legal and Factual Sufficiency*

In his first two AOEs, the appellant challenges the legal and factual sufficiency of the evidence to support the findings of guilty to forcible sodomy of LCpl DR and LCpl BH. In accordance with Article 66(c), UCMJ, this court reviews issues of legal and factual sufficiency *de novo*. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To find the evidence factually sufficient we, ourselves, having weighed the evidence in the record of trial and making allowances for not having personally observed the witnesses, must be convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

With regard to the legal and factual sufficiency of the evidence to prove forcible sodomy of LCpl DR, the appellant argues that the Government failed to establish the elements of force and lack of consent. We disagree. While LCpl DR made some concessions during cross-examination about what he could or might have done in response to the appellant's sexual advances on the night in question, the sum of his testimony established that he was heavily intoxicated at the time and was either substantially incapacitated or asleep while the appellant performed oral sex on him.[19] In such circumstances, no greater force is required than that necessary to achieve penetration.[20]

---

[19] We note that throughout the record the terminology "oral sex" was used to establish the unnatural carnal copulation element under Article 125, UCMJ. While not raised as an AOE, we recognize in some circumstances such language, without more, may be insufficient to establish this element. However, in this case we find a plain, ordinary, common sense reading of the LCpl DR's testimony provides circumstantial, if not direct, evidence that the appellant placed LCpl DR's penis in his mouth. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 51c.

[20] *See United States v. Grier*, 53 M.J. 30, 33 (C.A.A.F. 2000) (holding no instructional error where military judge instructed the members that if victim is incapable of consenting due to intoxication, "no greater force is required that that necessary to achieve penetration"); *United States v. Mathai*, 34 M.J. 33, 36 (C.M.A. 1992) (holding that evidence of rape was sufficient where the record established that the victim was unconscious due to alcohol intoxication, "and that [the appellant] reasonably knew or should have known that she had not consented").

Viewing the evidence in a light most favorable to the Government we are convinced that a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. In addition, we have carefully considered all the evidence of record and we are convinced beyond a reasonable doubt of the appellant's guilt to the forcible sodomy of LCpl DR.

Additionally, the appellant argues that the Government failed to meet its burden to prove forcible sodomy of LCpl BH. We agree. Simply put, LCpl BH's inconsistent testimony, coupled with the lack of specificity in the record to further describe what he meant when he testified that the appellant "was doing oral sex with me," leaves us unconvinced of the appellant's guilt to this offense beyond a reasonable doubt. While Sgt A testified that the appellant admitted to him that he "performed oral sex" on [LCpl BH], it was clear Sgt A was referring to an entirely separate night than LCpl BH testified to at trial, one that LCpl BH could not recall and provided no further information on. Thus, we find the evidence introduced at trial factually insufficient to support the conviction for forcible sodomy of LCpl BH.

### *Impartiality of the Military Judge*

In his third assignment of error, the appellant argues the military judge was actually biased against him because he "made several statements on the record that underscored his disgust with Sgt Street and his defense" and then gave him a harsh sentence. Appellant's Brief of 20 Mar 2014 at 16.

When, as in this case, an appellant "does not raise the issue of disqualification [of the military judge] until appeal, we examine the claim under the plain error standard of review." *United States v. Martinez*, 70 M.J. 154, 157 (C.A.A.F. 2011) (citing *United States v. Jones*, 55 M.J. 317, 320 (C.A.A.F. 2001)). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice." *Id.* (citation omitted).

"'[W]hen a military judge's impartiality is challenged on appeal, the test is whether, taken as a whole in the context of this trial, a court-martial's legality, fairness, and impartiality were put into doubt' by the military judge's actions." *Id.* at 157-58 (quoting *United States v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000)); *see* RULE FOR COURTS-MARTIAL 902(a), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). "The test is objective, judged from the standpoint of a reasonable person

8

observing the proceedings." *Burton*, 52 M.J. at 226 (citation omitted). "Failure of the defense to challenge the impartiality of a military judge may permit an inference that the defense believed the military judge remained impartial." *Id.* (citing *United States v. Hill*, 45 M.J. 245, 249 (C.A.A.F. 1996)).

Applying the above principles to this case, we hold the military judge was not disqualified. While the military judge expressed frustration with both trial and defense counsel at certain points during trial, none of his comments were directed at the appellant.[21] The appellant has neither shown plain and obvious error nor shown any prejudice to him from the military judge's comments. Accordingly, this AOE is without merit.

## Sentence Reassessment

The guilty finding for Specification 4 of Additional Charge III is set aside and that specification is dismissed with prejudice. As the appellant now stands convicted of only one of the two forcible sodomy offenses, this court must next determine whether this action has resulted in a "'dramatic change in the penalty landscape' [which] gravitates away from the ability to reassess" the sentence. *United States v. Buber*, 62 M.J. 476, 479 (C.A.A.F. 2006) (quoting *United States v. Riley*, 58 M.J. 305, 312 (C.A.A.F. 2003)). We find that there has not been a dramatic change in the sentencing landscape and that we are able to reassess the sentence in accordance with the principles set forth in *United States v. Moffiet*, 63 M.J. 40 (C.A.A.F. 2006), *United States v. Cook*, 48 M.J. 434 (C.A.A.F. 1998), and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

Here, notwithstanding our action in setting aside one of the two forcible sodomy offenses, the record as a whole and the facts adduced on the remaining affirmed offenses give ample justification for the sentence. The record is clear that the appellant repeatedly targeted and then sexually assaulted certain junior, under-aged Marines from his unit after wrongfully providing them with alcohol. Pursuant to a pre-trial agreement (PTA), the appellant plead guilty to and was found guilty of sexually assaulting one Marine, sexually harassing another, wrongfully providing alcohol to under-aged Marines on a number of occasions and impeding an investigation into his misconduct – where he faced 22 years of confinement. The PTA provided that the Government could go forward with the two remaining forcible sodomy offenses to which the appellant pled

---

[21] Record at 443-48.

not guilty, but provided that the CA would suspend all confinement in excess of twenty-four months. The appellant faced the same authorized maximum punishment if he were convicted of at least one of the two forcible sodomy offenses – life without the possibility of parole.

For these reasons, we are confident that the military judge would have adjudged, and the CA would have approved, a sentence at least as severe as ten years confinement, reduction to pay grade E-1 and a dishonorable discharge. Art. 66(c), UCMJ; *United States v. Winckelmann*, 73 M.J. 11 (C.A.A.F. 2013); *Sales*, 22 M.J. at 398.

## Conclusion

The finding as to Specification 4 of Additional Charge II having been set aside and that specification dismissed with prejudice, the remaining findings are affirmed. The sentence as reassessed is affirmed.

For the Court

R.H. TROIDL
Clerk of Court

10