# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 HUNTER I. CAMPBELL**
**United States Army, Appellant**

ARMY 20180107

Headquarters, U.S. Army Aviation Center of Excellence
Richard J. Henry, Military Judge
Colonel Leslie A. Rowley, Staff Judge Advocate

For Appellant: Captain Benjamin J. Wetherell, JA; William E. Cassara, Esquire (on brief); Captain Steven J. Dray, JA; William E. Cassara, Esquire (on reply brief, brief on specified issues, and reply brief on specified issues); Lieutenant Colonel Jack D. Einhorn, JA; Captain Benjamin A. Accinelli, JA; Captain Steven J. Dray, JA (on brief on specified issue).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Dustin B. Myrie, JA; Captain Lauryn D. Carr, JA (on brief and briefs on specified issues).

6 March 2020

-------------------------------------
MEMORANDUM OPINION
-------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLEMING, Judge:

On appeal, appellant asserts the military judge abused his discretion by failing to recuse himself and abused his discretion in admitting the victim's prior consistent statement pursuant to Military Rule of Evidence [Mil. R. Evid.] 801(d)(1)(B)(ii).[1] For the reasons set forth below, we do not find the military judge was required to recuse himself in appellant's case. However, we do find the military judge erred as

---

[1] Appellant did not initially raise these claims as assigned errors, rather the court sua sponte specified these issues for additional briefing. We have given full and fair consideration to appellant's three assigned errors in his brief and find they merit neither discussion nor relief.

a matter of law in admitting the victim's prior consistent statement prejudicing appellant's substantial rights.[2]

## BACKGROUND

### *The Offense*

Appellant and the victim, Specialist (SPC) KR, worked together as military police assigned to the same unit. In late January 2017, SPC KR went to appellant's home to play with his dog. After playing with the dog for approximately thirty minutes, appellant placed the dog in his cage. Specialist KR testified appellant then put his hand on her leg. She told him to move his hand, which he did briefly, but he then moved his hand between her legs. Specialist KR then asked appellant to bring the dog back into the room to play, which he did.

After beginning to play again with the dog, SPC KR testified appellant pulled down her pants and underwear to her knees. Appellant then got on top of SPC KR and penetrated her vulva with his fingers and tongue. Specialist KR testified she tried to pull her pants back up but appellant touched her vagina and grabbed her breast. Appellant then got off SPC KR and put the dog back in the cage. At that point SPC KR pulled her pants up, grabbed her keys, and headed towards the door. Before leaving, SPC KR testified appellant picked her up and said, "[w]hy did you come over here looking like that," "[y]ou're the reason why I'm horny," and, "[t]his is your fault."

Approximately two weeks later, SPC KR reported the incident to a friend in the barracks, Sergeant (SGT) CC. Eventually, SPC KR filed an unrestricted report and made a three-page written statement to the Army Criminal Investigation Command (CID) in mid-April 2017.

---

[2] A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of abusive sexual contact and two specifications of sexual assault, in violation of Article 120, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 920. Appellant was also convicted, in accordance with his pleas, of one specification of wrongful use of a controlled substance in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. The military judge sentenced appellant to a dishonorable discharge and confinement for twenty-four months. The convening authority approved the adjudged sentence. This case is now before us for review pursuant to Article 66, UCMJ.

*The Trial*

At trial, SPC KR testified on direct examination regarding the sexual assault. On cross-examination, the defense counsel questioned SPC KR about her motivation for reporting the sexual assault and defense-perceived inconsistencies between her trial testimony and her written statement to CID.

Following the defense cross-examination of SPC KR, the government moved to admit SPC KR's entire three-page CID statement as a prior consistent statement under Mil. R. Evid. 801(d)(1)(B)(ii). The defense objected on the grounds of hearsay and "[I]t's cumulative." The military judge admitted SPC KR's entire three-page written CID statement into evidence stating to the defense: "[y]ou did question [SPC KR's] credibility, so it's a prior consistent statement." The military judge did not provide any further analysis for his ruling.

*The Military Judge*

Appellant was arraigned on 25 October 2017 and tried on 6-7 March 2018 at Fort Rucker, Alabama. Lieutenant Colonel (LTC) Richard Henry was the military judge at all proceedings in appellant's case. At the time, LTC Henry was serving as a military judge at Fort Benning, Georgia. As part of his duties, LTC Henry was detailed to courts-martial at Fort Rucker.

Approximately a month after appellant's court-martial, on 8 April 2018, LTC Henry was removed from his position as a military judge. Thereafter, the then-commander of the United States Army Legal Services Agency appointed Colonel (COL) DR to conduct an investigation of LTC Henry pursuant to Army Reg. 15-6, Boards, Commissions, and Committees: Procedures for Administrative Investigations and Boards of Officers (1 Apr. 2016) [AR 15-6]. The investigating officer concluded that LTC Henry engaged in "a personal and emotionally intimate relationship with Mrs. [KC] between December 2017 - April 2018."[3] Mrs. KC was

---

[3] For a more detailed background of LTC Henry's relationship with Mrs. KC, *see United States v. Springer*, ARMY 20170662 __ M.J. __, 2020 CCA LEXIS 30 (Army Ct. Crim. App. 22 Jan. 2020). As we did in *Springer*, we take judicial notice of various items related to LTC Henry's relationship with Mrs. KC, located in two records of trial from another court-martial, *United States v. Rudometkin*, ARMY 20180058, and *United States v. Rudometkin*, ARMY MISC 20180675. Three items are particularly relevant to their relationship: (1) App. Ex. LXXIX, *United States v. Rudometkin*, ARMY 20180058 (military judge's findings of fact and conclusions of law concerning LTC Henry's inappropriate relationship); (2) transcript pages 1403-1541, *United States v. Rudometkin*, ARMY 20180058 (Article 39(a), UCMJ, post-

(continued . . .)

3

the wife of a trial counsel, CPT AC, assigned to the Fort Benning Office of the Staff Judge Advocate (OSJA). Captain AC played no role in appellant's court-martial.

## LAW AND DISCUSSION

### A. Military Judge's Recusal

"When an appellant, as in this case, does not raise the issue of disqualification until appeal, we examine the claim under the plain error standard of review." *United States v. Martinez*, 70 M.J. 154, 157 (C.A.A.F. 2011) (citing *United States v. Jones*, 55 M.J. 317, 320 (C.A.A.F. 2001)). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice." *Id.* (citing *United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008)).

"An accused has a constitutional right to an impartial judge." *United States v. Butcher*, 56 M.J. 87, 90 (C.A.A.F. 2001) (citations and internal quotation marks omitted). In furtherance of this right, the President promulgated Rule for Courts-Martial (R.C.M.) 902, which provides the framework for when a military judge must be disqualified from participating in a court-martial. Rule for Courts-Martial 902(a)-(b) establishes grounds for disqualification when a military judge is either actually biased or conflicted based on some specific grounds, or when the military judge appears to lack impartiality under all the facts and circumstances. *See also Martinez*, 70 M.J. at 157. Here, we focus on the military judge's appearance of impartiality.

"[A] military judge *shall* disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned." R.C.M. 902(a) (emphasis added). To determine if a military judge should disqualify himself, "the test is whether, taken as a whole in the context of this trial, a court-martial's legality, fairness, and impartiality were put into doubt" by the military judge's actions. *United States v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000) (citations and internal quotation marks omitted). When conducting this test, we apply an objective standard of "any conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned." *United States v. Kincheloe*, 14 M.J. 40, 50 (C.M.A. 1982) (citations and internal quotation marks omitted).

---

(. . . continued)
trial hearing related to LTC Henry's relationship with Mrs. KC); and (3) Def. App. C., *United States v. Rudometkin*, ARMY MISC 20180675 (Army administrative investigation into LTC Henry's relationship with Mrs. KC).

If we determine the military judge should have disqualified himself, we then analyze the facts to determine if the error was harmless. "In a plain error context we look to see if the error materially prejudiced the substantial rights of the appellant" pursuant to Article 59(a), UCMJ. *Martinez*, 70 M.J. at 159.

Even absent material prejudice to a substantial right pursuant to Article 59(a), UCMJ, a judge's failure to disqualify himself may still require a remedy after applying the test laid out in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 862-64 (1988). *See Martinez*, 70 M.J. at 159. In *Liljeberg*, the Supreme Court considered three factors in determining "whether a judgment should be vacated" based on a judge's appearance of partiality: "[1] the risk of injustice to the parties in the particular case, [2] the risk that the denial of relief will produce injustice in other cases, and [3] the risk of undermining the public's confidence in the judicial process." 486 U.S. at 864. The CAAF applies the same three-part test in analyzing cases involving a military judge's appearance of partiality pursuant to R.C.M. 902(a). *See United States v. Quintanilla*, 56 M.J. 37, 45 (C.A.A.F. 2001).

We therefore initially ask ourselves whether a reasonable person, knowing all the circumstances, would question LTC Henry's impartiality and, if so, is a remedy required? For the reasons set out below, we answer the first question in the negative and therefore need not reach the second question.

In considering whether a reasonable person would question LTC Henry's impartiality, we note the following relevant facts and circumstances: (1) the locality of appellant's court-martial (Fort Rucker, Alabama instead of Fort Benning, Georgia, where CPT AC was assigned); (2) CPT AC's lack of participation in appellant's court-martial; (3) CPT AC's assignment as a prosecutor in a different OSJA than the one prosecuting appellant's case; and (4) the lack of similarity between the charges in appellant's case and the nature of LTC Henry's undisclosed conduct. Based on these facts and circumstances, we find that a reasonable person would have no reason to question LTC Henry's involvement or impartiality in appellant's case. Accordingly, we find LTC Henry was not disqualified from acting as the military judge in appellant's court-martial.[4]

As we find that LTC Henry was not disqualified from acting as the military judge in appellant's case, we need not conduct an Article 59(a), UCMJ, analysis, nor analyze the three factors identified in *Liljeberg*.

---

[4] In contrast to *Springer*, ARMY 20170662 __ M.J. __, 2020 CCA LEXIS 30, we specifically find CPT AC had no involvement with appellant's case. We made a similar finding in *United States v. Anderson*, ARMY 20170158, __ M.J. ___, 2020 CCA LEXIS 35 (Army Ct. Crim. App. 5 Feb. 2020), where LTC Henry was the military judge, but CPT AC had no involvement in the case.

## B. *Prior Consistent Statements*

We next address the military judge's ruling to admit SPC KR's entire three-page statement to CID as a prior consistent statement under Mil. R. Evid. 801(d)(1)(B)(ii). We review a military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. Barnett*, 63 M.J. 388, 394 (C.A.A.F. 2006). (citation omitted). "An abuse of discretion occurs when the trial court's findings of fact are clearly erroneous or if the court's decision is influenced by an erroneous view of the law." *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (citation omitted). As we explain below, we find the military judge erroneously admitted SPC KR's entire CID statement, and find the error prejudiced appellant.

### *1. The Amended Rule*

In 2016, the President amended Mil. R. Evid. 801(d)(1)(B) to mirror the federal rule. *See* Exec. Order No. 13,730, 3 C.F.R. § 492 (2016); Federal Rule of Evidence (Fed. R. Evid.) 801(d)(1)(B). We discussed the amendment at length in this court's opinion in *United States v. Finch*, 78 M.J. 781 (Army Ct. Crim. App. 2019), *affirming the result,* __ M.J. __, 2020 CAAF LEXIS __ (C.A.A.F. 3 Mar. 2020).[5] This amendment split the previous rule into two parts to determine if a prior consistent statement may be admitted into evidence. The first part permits the use of a prior consistent statement to rebut a "charge that the declarant recently fabricated . . . . or acted from a recent improper influence or motive . . . testifying." Mil. R. Evid. 801(d)(1)(B)(i).

At issue in this case is the second part of the rule, which permits the use of a prior consistent statement to rehabilitate the credibility of a witness "attacked on another ground." Mil. R. Evid. 801(d)(1)(B)(ii). A prior consistent statement admitted into evidence under part (ii) can be used as substantive evidence as well as to rehabilitate the witness' credibility. *See Manual for Courts-Martial*, United States (2016 ed.), at A22-61; *see also* Fed. R. Evid. 801(d)(1)(B)(ii) advisory committee notes to 2014 amendments (stating "prior consistent statements otherwise admissible for rehabilitation are now admissible substantively as well.").

For a prior consistent statement to be admissible under Mil. R. Evid. 801(d)(1)(B)(ii), it must satisfy the following:

> (1) the declarant of the out-of-court statement must testify, (2) the declarant must be subject to cross-

---

[5] In *Finch*, the Court of Appeals for the Armed Forces found the military judge erred in admitting the victim's entire prior statement under Mil. R. Evid. 801(d)(1)(B), but found the error did not materially prejudice appellant's substantial rights. *Id.* at *2.

examination about the prior statement, (3) the statement must be consistent with the declarant's testimony, (4) the declarant's credibility as a witness must have been "attacked on another ground" other than the ones listed in [Mil. R. Evid.] 801(d)(1)(B)(i), and (5) the prior consistent statement must actually be relevant to rehabilitate the witness's credibility on the basis on which he or she was attacked.

*Finch*, __ M.J. __, 2020 CAAF LEXIS __ , at *12.

"Only those *portions* of a witness's prior statement that are *consistent* with the witness's courtroom testimony may be deemed admissible at trial." *Id.* at *2 (emphasis in original). "It is *not* the case that . . . *all* prior consistent statements are now automatically admissible following impeachment on *any* ground. Rather the military judge must make a determination that each prior consistent statement is relevant to rehabilitate the witness on one of the grounds cited in Mil. R. Evid. 801(d)(1)." *Id.* at 11. The proponent of the prior consistent statement must articulate "the relevancy link between the prior consistent statement and how it will rehabilitate" the witness's in-court testimony "with respect to the particular type of impeachment that has occurred." *Id.* at 12 (citation omitted).

"[T]o be admissible for rehabilitation, a prior consistent statement must satisfy the strictures of [Mil. R. Evid. 403]." *Finch*, 78 M.J. at 792. "Where a military judge properly conducts the balancing test under Mil. R. Evid. 403, we will not overturn his decision unless there is a clear abuse of discretion." *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010) (quoting *United States v. Ruppel*, 49 M.J. 247, 251 (C.A.A.F. 1998)).

### 2. Attacks on Specialist KR's Credibility

We now address whether the military judge's one-sentence ruling that the defense counsel "did question [SPC KR's] credibility, so [her entire CID statement was admissible as] a prior consistent statement" was an abuse of his discretion. The military judge's ruling fails to provide any detail as to how SPC KR's credibility was "attacked on another ground" and how her CID statement rehabilitated her in-court testimony. The military judge also failed to conduct a balancing test under Mil. R. Evid. 403 prior to admitting SPC KR's entire three-page CID statement. Accordingly, we afford the military judge's ruling little deference. *See United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000).[6]

---

[6] We emphasize our Superior Court's first footnote in *Finch* which reminds military

(continued . . .)

After our close review of the record, we identified four grounds where the defense counsel attempted to attack SPC KR on another ground regarding an alleged inconsistency between her trial testimony and her written CID statement.[7] We address each ground in turn and find the military judge abused his discretion admitting SPC KR's entire three-page CID statement under Mil. R. Evid. 801(d)(1)(B)(ii) and Mil. R. Evid. 403.

*First Ground*

The defense attempted to attack SPC KR regarding the placement of appellant's hands during the sexual assault. On direct examination, SPC KR testified, "[appellant] was using one hand touching my vagina, and the other hand under my shirt and my bra and grabbed my breast." On cross-examination, the defense counsel asked SPC KR, "[You] don't even remember where his hands were."

Specialist KR replied, "I said one hand was used to touch and go into my vagina, the other hand was used to go under my shirt." The defense countered with, "But you told CID that [appellant] had both hands holding you down, above your chest." Specialist KR stated she did not recall making that statement to CID. The defense counsel then retracted his cross-examination question and agreed with SPC KR on this point stating, "I apologize, it wasn't in your [CID] statement." The defense elicited no inconsistency requiring the rehabilitation of SPC KR's

---

(. . . continued)
judges of the importance of placing his or her reasoning behind the resolution of an evidentiary ruling on the record. *Finch*, __ M.J. __, 2020 CAAF LEXIS __ , at *13 n. 1. We further expound upon that concept by reminding military judges to require the proponent of the evidence to establish "the relevancy link between the prior consistent statement and how it will rehabilitate the witness with respect to the particular type of impeachment that has occurred." *Id*. at *12.

[7] We pause to briefly discuss a fifth ground. During direct examination, SPC KR testified she went to appellant's house to play with his dog because she had recently learned that her dog had died. During cross-examination, the defense counsel asked SPC KR whether her dog had died earlier than she initially claimed during her direct examination. The defense counsel insinuated SPC KR went to appellant's house to see appellant, and not because she was sad about the death of her dog. Establishing an inconsistent or consistent statement regarding the death of SPC KR's dog and her alleged reason(s) for going to appellant's house, however, was problematic because her CID statement merely stated that her dog had "recently passed away." The minimal probative value, if any, regarding the death of SPC KR's dog and her alleged reason(s) for going to appellant's house did not warrant admitting her entire statement to CID under Mil. R. Evid. 801(d)(1)(B)(ii) or Mil. R. Evid. 403.

credibility and her prior CID statement should not have been admitted based on this line of questioning.

*Second Ground*

The defense attempted to attack SPC KR regarding the details of her report to SGT CC. During cross-examination, the defense counsel asked SPC KR, "[SGT CC] overheard you crying and he came to check on you, that's how it happened, right?" Specialist KR replied, "I don't think he overheard me crying. I think he was just coming by to speak or something. And that day I was crying, and when I opened the door my eyes were red and it did look like I was crying, and I think that's why he asked what was wrong." The defense counsel then asked SPC KR, "[b]ut you told CID that you went over to his room; that's how it began, that's how you eventually report it. Do you remember that?" Specialist KR replied that she did not remember telling that to CID.

The only mention of SGT CC in SPC KR's written statement to CID is the following:

> I told my neighbor in the barracks, [SGT CC]. I asked
> him if I seemed like I was a person who would have sex
> with anyone. He asked me why I was asking a question
> like that. I tried to back out of it but I got upset and told
> him what was going on.

Specialist KR's written CID statement does not clarify whether SGT CC overheard her crying and came to her room or whether she went to his room. Based on this lack of clarification SPC KR's CID statement was not a prior consistent statement in relation to her trial testimony. It does clarify, however, that SPC KR did not tell CID that she went to SGT CC's room, as the defense counsel suggested she had stated to CID during his cross-examination.

To the extent there is any probative value in rebutting a defense counsel question, the appropriate remedy would have been to admit into evidence the portion of SPC KR's written statement, in block quotes above, which precisely related to and rebutted the specific manner in which SPC KR's credibility was attacked. *See Finch*, __ M.J. __, 2020 CAAF LEXIS __ , at *2. Under the specific circumstances, admitting SPC KR's entire CID statement, which recounted the entire offense, was an overly expansive application of part (ii) of the rule.

*Third Ground*

The defense counsel attempted to attack SPC KR's testimony regarding whether or not she asked appellant to put the dog away. On cross-examination, the defense counsel asked SPC KR whether she told appellant she was done playing with the dog. Specialist KR disagreed. The defense counsel then asked her, "You didn't tell CID 'My back was starting to hurt and [appellant] noticed I was struggling to hold the dog?'" Specialist KR agreed that she did make that statement to CID.

The exact statement she made to CID is as follows:

> My back was starting to hurt and [appellant] noticed that I was struggling a little with the dog. [Appellant] called the dog off of me and put him back in his cage. I told him he didn't have to do that but he insisted anyways.

Specialist KR's CID statement clarifies that she did not tell CID that she told appellant to put the dog away, as the defense counsel asserted she had.

On this minor point, SPC KR's statement to CID may have rehabilitated SPC KR's credibility. However, the appropriate remedy would have been to admit into evidence the portion of SPC KR's statement, in block quotes above, which precisely related to and rebutted the specific manner in which SPC KR's credibility was attacked. The highly prejudicial nature of SPC KR's entire three-page CID statement, which recounted the sexual assault, substantially outweighed the minimal probative value of the evidence regarding the narrow and relatively inconsequential issue as to whether SPC KR asked appellant to put the dog away.

*Fourth Ground*

Lastly, the defense counsel attempted to attack SPC KR's testimony regarding the size of the sofa upon which the alleged sexual assault occurred. On cross-examination, SPC KR testified the sofa had three cushions. The defense counsel questioned her, "You never said it was more of a loveseat at some point?" Specialist KR stated she did not recall stating that, but then after reviewing her CID statement she agreed.

Specialist KR's exact words in her CID statement are, "It was more of a loveseat that could only fit two people." However, later in her CID statement she stated, "I may have been wrong about the size of the couch because my legs were straight."

Specialist KR's testimony that the sofa had three cushions and later agreement that the couch was a loveseat does not clearly resolve whether she was making a

consistent or inconsistent statement. Agreeing that the sofa was a loveseat does not equate to SPC KR clearly adopting that the sofa had two cushions as opposed to three cushions. Based on her agreement with the defense counsel as to the loveseat status of the sofa, however, SPC KR's prior consistent statement to CID had already been elicited during the defense cross-examination so there was little, if any, probative value to the government attempting to rehabilitate her credibility on this point.

Again, the appropriate remedy, if any, would have been to admit into evidence the portion of SPC KR's statement, in quotes above, which precisely related to and rebutted the specific manner in which SPC KR's credibility was attacked regarding the sofa. The highly prejudicial nature of SPC KR's entire three-page CID statement, which recounted the sexual assault, substantially outweighed the minimal probative value of the evidence swirling around SPC KR's uncertainty regarding whether she "may have been wrong about the size of the couch" which was contained in her prior CID statement and then lingered into her trial testimony.

### 3. Prejudice

The possible inconsistences raised by the defense counsel regarding SPC KR's trial testimony and her prior CID statement focused on narrow collateral matters which were relatively inconsequential. In other words, the defense's very limited attack on SPC KR's credibility did not relate to the prejudicial portion of her three-page CID statement, her recounting of the sexual assault, which was admitted as substantive evidence to convict appellant.

Finding the admission of SPC KR's entire three-page CID statement was error, we must determine if the error was harmless. *See* UCMJ art. 59(a). The government bears the burden of demonstrating that the admission of erroneous evidence is harmless. *See United States v. Flesher*, 73 M.J. 303, 318 (C.A.A.F. 2014). We must determine "whether the error had a substantial influence on the findings." *United States v. Kohlbek*, 78 M.J. 326, 334 (C.A.A.F. 2019) (citation omitted) (internal quotation marks omitted). "We evaluate prejudice from an erroneous evidentiary ruling by weighing (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Id.* at 334 (citing *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999) (further citations omitted). After weighing these factors, we conclude appellant was prejudiced by the erroneous admission of SPC KR's entire CID statement which substantially impacted the findings.

The government's case was weak. Absent SPC KR's CID statement, the government's case consisted entirely of her testimony. As in *Finch*, the government possessed no "forensic evidence, physical evidence, or witnesses who had first-hand information" about the offense. *Finch*, __ M.J. __, 2020 CAAF LEXIS __ , at *16.

11

No independent corroborating evidence existed. Meanwhile, the defense presented witness testimony contradicting SPC KR's testimony and undermining her credibility. The materiality and quality of SPC KR's CID statement was substantial because it "went to the heart of the matter in dispute," addressing the material elements of the sexual assault offenses, and it was considered for the truth of the matter asserted. *See, e.g. United States v. Frost*, 79 M.J. 104, 112 (C.A.A.F. 2019).

We contrast appellant's case with *Finch*. In *Finch*, the CAAF found the victim's CID interview, which was erroneously admitted in its entirety, contained one portion that was particularly prejudicial. However, the CAAF explained the prejudicial portion of the interview did not have a substantial influence on the findings because that portion was a "mere passing reference in a very lengthy video," the government did not seek to "exploit" that portion at trial, the portion was "imprecise," and there was independent evidence of this prejudicial evidence. *Finch*, __ M.J. __, 2020 CAAF LEXIS __ , at *18-19.

In appellant's case, the prejudicial portion of SPC KR's statement was her recounting of the sexual assault, which consumed the majority of her statement, not a "mere passing reference." Also, SPC KR's CID statement was not "imprecise." In fact, it precisely detailed the sexual assault, corroborating her in-court testimony.

Finally, the government counsel improperly exploited a portion of SPC KR's CID statement during the closing arguments on the merits. Defense counsel initially argued in their closing that SPC KR only reported the sexual assault because SGT CC reported it, and then she "was confronted by her command," and "she found herself in a trap." This defense argument focused on SPC KR's motive to fabricate. In order for a prior consistent statement to be admissible to rebut a motive to fabricate it must precede the alleged improper influence. *See Frost*, 79 M.J. at 110. Specialist KR's CID statement did not precede SGT CC's report or the confrontation by her command and it could not have been admitted as a prior consistent statement under Mil. R. Evid. 801(d)(1)(B)(i).

During the government's closing rebuttal argument, counsel highlighted for the military judge, "on the third page [of her CID statement that] . . . '[SPC KR] decided to go unrestricted because [SPC KR] realized that this wasn't [her] fault through treatment." The government's use of her CID statement to proffer a nonbiased neutral reason for her to report the offense undercut the defense theory that she possessed a motive to fabricate. Absent the entire statement's erroneous substantive admission under Mil. R. Evid. 801(d)(1)(B)(ii), it would have been impermissible for the military judge to consider that portion of the statement to rebut the defense's asserted motive to fabricate. The military judge did not put any findings of fact or particularized conclusions of law on the record with regard to this complex evidentiary issue.

In conclusion, the admission of SPC KR's entire three-page CID statement served only to bolster her trial testimony and it possessed minimal, if any, rehabilitative value as to her credibility regarding any alleged inconsistences regarding narrow collateral matters raised by the defense during her cross-examination. After applying the *Kerr* factors, in light of the whole record, we find the erroneous admission of her entire CID statement substantially influenced the outcome of the trial and prejudiced appellant.

## CONCLUSION

Having considered the entire record, the findings of guilty of the Specifications of Charge I, and Charge I are SET ASIDE. The remaining findings of guilty are AFFIRMED. The sentence is SET ASIDE. The same or a different convening authority may: 1) order a rehearing on Charge I and its specifications and the sentence; or 2) dismiss Charge I and its specification and order a rehearing on the sentence only.

Senior Judge BURTON and Judge RODRIGUEZ concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court