# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

## Staff Sergeant DAVID W. TURNER II
## United States Air Force

### ACM S32317

### ___ M.J. ___

### 2 November 2016

Sentence adjudged 17 December 2014 by SPCM convened at McConnell Air Force Base, Kansas. Military Judges: Todd E. McDowell (trial) and Matthew S. Ward (post-trial hearing).

Approved sentence: Bad-conduct discharge, confinement for 45 days, and reduction to E-3.

Appellate Counsel for Appellant: Major Isaac C. Kennen (argued) and Lieutenant Colonel Nicholas W. McCue.

Appellate Counsel for the United States: Major J. Ronald Steelman III (argued); Major Lance R. Smith; Major Mary Ellen Payne; and Gerald R. Bruce, Esquire.

Before

MAYBERRY, SPERANZA, and JOHNSON
Appellate Military Judges

PUBLISHED OPINION OF THE COURT

SPERANZA, Judge:

A military judge sitting alone as a special court-martial convicted Appellant, contrary to his pleas, of two specifications of abusive sexual contact in violation of Article 120, UCMJ, 10 U.S.C. § 920. The military judge acquitted Appellant of one specification of assault consummated by a battery under Article 128, UCMJ, 10 U.S.C. § 928. At the request of the Defense, the military judge issued special findings under Rule for Courts-

Martial (R.C.M.) 918(b). The adjudged and approved sentence consisted of a bad-conduct discharge, confinement for 45 days, and reduction to E-3.

On appeal, Appellant raises three assignments of error: (1) the military judge abused his discretion by not *sua sponte* recusing himself; (2) the circumstances of this case create the appearance that the Special Victim's Counsel (SVC) attempted to influence the action of the military judge in reaching the findings or sentence; and (3) the evidence is not factually sufficient to sustain the convictions. Although we conclude the military judge and SVC engaged in proscribed communications outside the presence of the parties, we find no error materially prejudicial to Appellant and affirm. [1]

*Background*

During a going-away party at Cavalier Air Force Station, North Dakota, Appellant touched First Lieutenant (1st Lt) ES's breast with his hand and pressed the front of his body against the back of hers. Appellant was convicted of two specifications of abusive sexual contact for this conduct.

On the morning of trial, the military judge met with trial counsel and trial defense counsel in accordance with R.C.M. 802. The SVC representing 1st Lt ES did not attend this conference. That same morning, the military judge met with the SVC in chambers. The parties did not attend the military judge's meeting with the SVC. During this meeting, the military judge provided his expectations regarding the SVC's participation in the

---

[1] We also note there was presumptively unreasonable post-trial delay in this case. Appellant's court-martial concluded on 17 December 2014. That same day, Appellant was notified of his right to submit clemency matters. The military judge authenticated the record of trial on 20 January 2015. On 22 January 2015, trial defense counsel submitted a motion to the military judge requesting the judge set aside the findings and sentence and conduct a post-trial Article 39(a), UCMJ, 10 U.S.C. § 839(a), motions hearing. On 24 January 2015, the military judge declined to act on the Defense motion, citing R.C.M. 1102 and his lack of authority to grant the relief sought by the Defense. In addition, the military judge "disqualified" himself from further action in the case and advised the Defense to submit its request to the convening authority for action. On 27 January 2015, the convening authority directed that a post-trial Article 39(a) session be held "[p]ursuant to [his] authority under [R.C.M.] 1102." A new military judge conducted the post-trial session on 9 April 2015. A verbatim record of the post-trial hearing was authenticated by the new military judge on 29 April 2015. On 30 April 2015, the staff judge advocate's recommendation (SJAR) was served on the Defense. On 6 May 2015, trial defense counsel requested a delay in submitting Appellant's clemency matters. This request was approved on the same day, and Appellant submitted his clemency matters to the convening authority on 14 May 2015. On 18 May 2015, the staff judge advocate provided the convening authority an addendum to his recommendation that included Appellant's clemency matters. The convening authority considered Appellant's submissions and took action on 19 May 2015. Although the time from the conclusion of Appellant's trial to action in this case exceeded 120 days, Appellant has not sought relief pursuant to *United State v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006). However, *Moreno* established a presumption of unreasonable post-trial delay when the convening authority does not take action on the findings and sentence within 120 days of trial. *Id.* at 142. Accordingly, we apply the familiar four-factor balancing test set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), and find the post-trial delay in this case warrants no relief. We also decline to exercise our power under Article 66(c), UCMJ, 10 U.S.C. § 866(c), to grant Appellant relief for a reasonable post-trial delay. *See United States v. Tardif*, 57 M.J. 219, 224-25 (C.A.A.F. 2002).

courtroom and confirmed the status of any motions raised pursuant to Military Rules of Evidence (Mil. R. Evid.) 412, 513, 514, and 615. The SVC also asked the military judge if the Defense raised issues related to the termination of trial defense counsel's pretrial interview of 1st Lt ES. The meeting between the SVC and the military judge lasted fewer than five minutes. The military judge placed a summary of this meeting on the record, but did not disclose that the SVC inquired about the termination of the pretrial interview. After trial, the military judge provided feedback to counsel. During his feedback session with trial defense counsel, the military judge addressed the pretrial interview of 1st Lt ES.

Based on the information communicated during the post-trial feedback session, trial defense counsel filed a motion claiming the military judge engaged in unlawful ex parte communications with the SVC and requesting the findings and sentence be set aside. Trial defense counsel did not allege unlawful influence. In accordance with R.C.M. 1102, the convening authority ordered a post-trial Article 39(a), UCMJ, 10 U.S.C § 839(a) session. The military judge recused himself and a new military judge was detailed to the case. The original military judge, the SVC, and Appellant testified at the post-trial Article 39(a), UCMJ, hearing.[2]

Additional facts necessary to resolve the assignments of error are included below.

*Disqualification of the Military Judge*

We review a military judge's decision on disqualification for an abuse of discretion. *United States v. Quintanilla*, 56 M.J. 37, 77 (C.A.A.F. 2001) (citing *United States v. Norfleet*, 53 M.J. 262, 270 (C.A.A.F. 2000)). "On appeal, 'the test is objective, judged from the standpoint of a reasonable person observing the proceedings.'" *Quintanilla*, 56 M.J. at 78 (quoting *United States v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000)). When a military judge's impartiality is challenged on appeal, the test is "whether, 'taken as a whole in the context of this trial,' a court-martial's 'legality, fairness, and impartiality' were put into doubt by the military judge's actions." *Id.* (quoting *Burton*, 52 M.J. at 226).

R.C.M. 902 provides the basis for when a military judge should be disqualified. It states that "a military judge shall disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned." R.C.M. 902(a). As our superior court has held, "An accused has a constitutional right to an impartial judge." *United States v. Wright*, 52 M.J. 136, 140 (C.A.A.F. 1999). There is a strong presumption that a judge is impartial, and a party seeking to demonstrate bias must overcome a high hurdle, particularly when the alleged bias involves actions taken in conjunction with judicial proceedings. *Quintanilla*, 56 M.J. at 44. Although a judge has a duty not to sit when disqualified, the judge has an equal duty to sit on a case when not disqualified.

---

[2] Ordinarily, we would review the military judge's resolution of the Defense's post-trial motion. However, the military judge presiding over the post-trial Article 39(a), UCMJ, session declined to find facts, reach conclusions of law, and rule on the Defense's motion, despite his authority to do so. *See* R.C.M. 1102(b)(2).

*United States v. Witt*, 75 M.J. 380, 383 (C.A.A.F. 2016) (citing *Laird v. Tatum*, 409 U.S. 824, 837 (1972)).

A military judge's ex parte interactions with counsel and witnesses may form the basis for disqualification; however, "certain ex parte communications are permissible." *Quintanilla*, 56 M.J. at 44. Disqualification is not required "if the record shows that the communication did not involve substantive issues or evidence favoritism for one side." *Id.* at 79. We consider the following factors to determine whether an ex parte communication necessitates disqualification:

> A decision on disqualification will "depend on the nature of the communication; the circumstances under which it was made; what the judge did as a result of the ex parte communication; whether it adversely affected a party who has standing to complain; whether the complaining party may have consented to the communication being made ex parte, and, if so, whether the judge solicited such consent; whether the party who claims to have been adversely affected by the ex parte communication objected in a timely manner; and whether the party seeking disqualification properly preserved its objection."

*Id*. at 44 (quoting RICHARD E. FLAMM, JUDICIAL DISQUALIFICATION, § 2.6.3 at 45 (1996)).

At the post-trial Article 39(a), UCMJ, session, the military judge testified that he had "no recollection" of 1st Lt ES's termination of the pretrial interview being addressed during his pretrial meeting with the SVC, but acknowledged it was "quite possible that, in passing, there was a reference made by [him] or by [the SVC], as it relate[d] to access to witnesses and making sure that that was taken care of." The military judge recalled a more extensive conversation with the SVC after trial in which he reminded the SVC of the need to ensure the Defense had a full opportunity to interview his client. The military judge further testified that the conversation with the SVC "was not something that was of a significant detail [sic] and related to the case that I have any recollection of . . . and was not something that I addressed on the record." Regarding the conversation's impact on the case, the military judge testified that the pretrial conversation had "[n]o impact whatsoever" on his deliberations in either the findings or sentencing phases of trial.

The SVC also testified at the post-trial Article 39(a), UCMJ, session. When asked by the trial defense counsel if it was the "standard in practice as an SVC to meet with the military judge ex parte," the SVC stated, "Generally, yes. We're usually not included in [R.C.M.] 802 conferences, so generally the judge will speak with us, kind of one-on-one, sometimes before the trial begins and discuss just kind of administrative matters." The SVC did not recall having a post-trial feedback session with the military judge. The SVC testified that he did not "go into specifics of the disagreement" about the termination of the

pretrial interview with the military judge. He did recall telling the military judge that the Defense had terminated the interview because his client "did not want to answer questions that she had answered previously" and the Defense had indicated that they may bring the issue to the military judge. He further testified that his intent in asking the military judge about the status of this issue was to find out whether the Defense had in fact filed a motion so that he "could prepare any motions or argument . . . to assert [his] client's rights."

Based on the testimony, it is clear the SVC and the military judge met in the military judge's chambers before trial without the parties. The Government argues that because the SVC was not a party to the court-martial, this could not have been an ex parte communication. We disagree.

> A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding . . . .

Air Force Instruction (AFI) 51-110, *Professional Responsibility Program*, Attachment 9 (Air Force Uniform Code of Judicial Conduct or "the Judicial Code"), Canon 3B(7) (7 July 2016); *see also* AFI 51-110 at Attachment 8, Standard 6-2.1 ("The military judge should insist that neither the trial counsel nor the defense counsel, *nor any other person*, discuss a pending case with the judge *ex parte*, except after adequate notice to all other parties and when authorized by law or in accordance with approved practice. The military judge should ensure that all such *ex parte* communications are subsequently noted on the record.") (emphasis added). The problems inherent to such communications are not created because they are with a particular party or participant, but because they exclude the others. A military judge meeting with an SVC—a trial participant with limited standing, *see LRM v. Kastenberg*, 72 M.J. 364 (C.A.A.F. 2013)—to the exclusion of both parties is envisioned by and implicates the same concerns as Canon 3B(7). We thus readily conclude that ex parte communications between a military judge and an SVC are generally proscribed.

We recognize that not all communications by a military judge that exclude a party, or in this case both parties, are per se prohibited. Indeed, the Judicial Code carves out five exceptions to the general prohibition, including, when necessary, ex parte communications "for scheduling, administrative purposes, or emergencies that do not deal with substantive matters or issues on the merits." Canon 3B(7)(a). But there must be timely disclosure of the nature of the communication to the absent party. Canon 3B(7)(a)(1); *see also Quintanilla*, 56 M.J. at 44.

Here, although the SVC did not represent a party to the litigation, he was not a stranger to the court-martial. The SVC's client was a participant with limited standing at the court-martial, and the military judge had a reasonable interest in managing his courtroom and maintaining the dignity of the proceedings. Appropriately, the military judge sought to provide the SVC direction on how to address the court-martial and to discuss other administrative matters. However, the line between administrative and substantive matters blurs quickly. What may start as a simple discussion of administrative matters can easily become a discussion of substantive issues. Therefore, the military judge's in-chambers meeting with the SVC, without the parties, was fraught with risk. This risk was quickly realized once the SVC revealed the facts and circumstances surrounding the trial defense counsel's pretrial interview with the SVC's client, a Government witness who also maintained recognized legal interests in the proceedings. Whether foreseeable or not, we find that this constituted a proscribed substantive communication between the military judge and the SVC outside the presence of the parties.[3]

We thus turn to whether the proscribed communication necessitated disqualification. Applying the factors established in *Quintanilla*, 56 M.J. at 44, we find that it did not and that a reasonable person fully informed of all the facts would not question the legality, fairness, and impartiality of Appellant's court-martial.

*Preserved, Timely Objection and Consent to the Communication*. Appellant properly preserved this issue with a timely objection. Additionally, Appellant would not have consented to the communication between the military judge and SVC occurring outside of his, or his counsel's, presence. Although Appellant did not object when the military judge summarized the meeting with the SVC on the record, that summary was inadequate. When Appellant was made aware of the full content of the communication, he promptly objected. Thus, these factors weigh in favor of disqualification.

*Nature and Circumstances of the Proscribed Communication.* The nature of the communication and the circumstances under which it was made related to the SVC's representation of a participant with limited standing. The military judge maintained a legitimate interest in clarifying that participant's role and coordinating any administrative matters related to such participation. Although the military judge's comments focused on administrative matters regarding the SVC's in-court representation, the meeting briefly delved into substantive matters when the SVC addressed limited details regarding his client's pretrial interview. Despite the prohibition against these types of communications, we find the SVC's questions and disclosure were not some nefarious attempt to provide the military judge with information prejudicial to Appellant. Therefore, these factors weigh against disqualification.

---

[3] Even if the military judge's communications with the SVC about the pretrial interview had been purely administrative, we find that the military judge failed to adequately disclose the nature of the administrative communications to the parties.

*Actions Taken and Impact on Appellant.* The military judge did not exploit the communication to take any action in this case; thus, Appellant was not adversely affected. The Defense did not file a motion regarding the pretrial interview, so the military judge did not act directly on this matter. Although the military judge permitted trial defense counsel to meaningfully cross-examine 1st Lt ES, Appellant nevertheless contends that the military judge might have been more sympathetic to the victim because she endured aggressive and repetitive pretrial questioning. However, there is nothing in the record to support this assertion. It is equally possible that the military judge may have been sympathetic to the Defense due the Defense's inability to conduct a pretrial interview. Thus, the argument of sympathy, one way or the other, is purely speculative. The record of this case supports the strong presumption that the military judge was impartial.

Appellant further argues that the military judge's special finding that the victim was credible is evidence of the impact of the prohibited communication. We are not persuaded. The military judge listed four witnesses he found credible. Included in that list were the victim and a witness called by the Defense. There is no indication that the special finding on the credibility of any witness was related to the proscribed communication.

Appellant also argues that the military judge's duty history as an agent with the Air Force Office of Special Investigations, as a trial counsel, and as a victim liaison support his argument that a reasonable observer would question the impartiality of the military judge. Prior to forum selection, trial defense counsel questioned the military judge about these prior duty assignments. Appellant did not challenge the military judge for cause and later elected to have his case heard by the military judge alone. While Appellant focuses on an incomplete recital of the military judge's career, a fully informed observer would also be aware that the military judge served as an area defense counsel and as a chief senior defense counsel. The military judge's duty history would not cause a reasonable observer to view the proscribed communication as evidence of bias towards Appellant or favoritism towards the Government and its witnesses.

Appellant next attempts to establish prejudice by pointing to his own testimony at the post-trial Article 39(a), UCMJ, hearing in which he asserted he would not have elected to be tried by a military judge had he known of the full content of the communication. We are not moved by Appellant's second-guessing of his forum selection after the factfinder returned a guilty verdict. We decline to speculate whether Appellant might have received a different result with a different forum. Moreover, the military judge testified at the post-trial Article 39(a), UCMJ, hearing that the proscribed conversation had "[n]o impact whatsoever" on his deliberations in either findings or sentence. The military judge acquitted Appellant of a charge of assault consummated by battery. As such, we cannot say that Appellant's forum selection resulted in any unfair prejudice.

Under these circumstances, these factors weigh against disqualification.

When viewing the military judge's pretrial communications with the SVC in the context of this trial, a reasonable person observing the proceedings would not doubt the court-martial's legality, fairness, and impartiality. Therefore, the military judge did not abuse his discretion by failing to *sua sponte* recuse himself.

*Unlawful Command Influence and Unlawful Influence*

We review claims of unlawful command influence and unlawful influence de novo. *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2012); *see United States v. Stombaugh*, 40 M.J. 208, 213–14 (C.M.A. 1994) (applying the principles of unlawful command influence to issues of unlawful influence). Article 37(a), UCMJ, 10 U.S.C. § 837(a), states: "No person subject to [the UCMJ] may attempt to coerce or, by any unauthorized means, influence the action of a court-martial . . . or any member thereof, in reaching the findings or sentence in any case . . . ."

Our review of unlawful command influence is not limited to actual unlawful influence; we also consider any appearance of unlawful command influence which may be "as devastating to the military justice system as the actual manipulation of any given trial." *United States v. Ayers*, 54 M.J. 85, 94–95 (C.A.A.F. 2000) (quoting *United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991)). The test for the appearance of unlawful command influence is whether "an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding." *United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006).

When raised on appeal, an appellant "bears the initial burden of raising unlawful command influence. [An appellant] must show: (1) facts, which if true, constitute unlawful command influence; (2) that the proceedings were unfair; and (3) that the unlawful command influence was the cause of the unfairness." *Salyer*, 72 M.J. at 426. While the initial burden of showing unlawful command influence is low, an appellant must present "some evidence" of unlawful command influence beyond mere allegation or speculation. *United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002). If an appellant raises some evidence of unlawful command influence, the burden shifts to the Government to rebut the allegation by persuading the court "beyond a reasonable doubt that: (1) the predicate facts do not exist; (2) the facts do not constitute unlawful command influence; or (3) the unlawful command influence did not affect the findings or sentence." *Salyer*, 72 M.J. at 415 (citing *United States v. Biagase*, 50 M.J. 143, 151 (C.A.A.F. 1999)).

Appellant has failed to present some evidence that the facts constitute unlawful command influence. Appellant has alleged that the SVC was acting with the mantle of command authority and attempted to influence the military judge. We find no facts to support either proposition. In this case, the SVC represented a Government witness, not the Government or the command. Contrary to Appellant's assessment, an SVC does not wield the mantle of command simply because the SVC is a military officer, was detailed

to the case by a military officer, and performed duties pursuant to an Air Force program. Appellant has provided no evidence that the SVC claimed to assert the positions of command or that he was representing anyone but his client. There are no facts which, if true, would indicate that he wielded the mantle of command, and thus he did not commit unlawful command influence.

Moreover, nothing about the interaction between the SVC and the military judge suggests that the SVC attempted to influence the military judge on either the findings or the sentence. The evidence in the record shows the SVC intended to ascertain, by asking a question, whether the Defense had filed a motion regarding the termination of the victim's interview which may have required his response or courtroom participation. There is no evidence that the SVC had the specific intent to influence the military judge in asking this question; nor is there any evidence that the military judge understood this as an attempt to influence him. Therefore, Appellant has not met his burden of providing some evidence which, if true, would constitute unlawful command influence.

Assuming, arguendo, that Appellant has met the first prong of the three-part test, we find that Appellant has not presented evidence beyond speculation that the proceedings were unfair or that an objective, disinterested observer fully informed of all the facts and circumstances would harbor a significant doubt about the proceedings' fairness. Appellant argues that a reasonable observer "might believe"—given the military judge's duty history—that the military judge would view the trial defense counsel who "badgered" a witness with repetitive questions before trial as "unscrupulous and therefore less trustworthy in his arguments at trial." However, as noted above, the military judge had also been an area defense counsel and a senior defense counsel. The entirety of the military judge's duty history and his actions in this court-martial evidence no unfairness at any stage of this court-martial. Thus, Appellant failed to show that the proceedings were unfair or appeared to be unfair.

Even if we were to conclude that Appellant had met his burden of producing some evidence of unlawful command influence, we are convinced beyond a reasonable doubt that the Government has rebutted those claims. The military judge testified that the pretrial conversation with the SVC had "[n]o impact whatsoever" on his deliberations in either findings or sentencing. We have no reason to question this statement. The military judge acquitted Appellant of one charge and sentenced Appellant to a term of confinement well below trial counsel's recommendation. The Government has proved beyond a reasonable doubt that any possible unlawful command influence did not affect the findings or sentence, and an objective, disinterested observer, fully informed of all the facts and circumstances, would not harbor a significant doubt about the fairness of the proceeding.

Our resolution of Appellant's claim of unlawful *command* influence does not end the inquiry. While most claims under Article 37, UCMJ, allege that the unlawful influence was committed by someone wearing the mantle of command, that is not a prerequisite to

establishing a claim under Article 37. As stated by our superior court, "It goes without saying that a violation of Article 37 does not automatically amount to unlawful command influence." *Stombaugh*, 40 M.J. at 210–11; *see also United States v. Denier*, 47 M.J. 253, 267 (C.A.A.F. 1997) (Sullivan, J. dissenting in part and concurring in the result) ("[A]ll that needs to be proved . . . is that someone subject to the UCMJ tried to improperly influence the . . . findings or sentence. Article 37 clearly indicates on its face that . . . command does not matter when the fairness of a court-martial is at issue."). Both unlawful command influence and unlawful influence are proscribed by Article 37, but the latter does not require the act be done with the mantle of command authority.

The test for unlawful influence is the same as the test for unlawful command influence, except that if an appellant meets his initial burden, the Government need only rebut the allegations by a preponderance of the evidence. *Stombaugh*, 40 M.J. at 213–14.

The issue of unlawful influence need not detain us long. As stated above, Appellant failed to present some evidence that the proceedings were affected by any actual or apparent unlawful influences. Moreover, even if Appellant met this threshold, we are convinced that the Government has proved beyond a reasonable doubt—much less by a preponderance of the evidence—that any alleged unlawful influence did not affect the findings or sentence.

*Legal and Factual Sufficiency*

We review issues of legal and factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987); *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). However, "reasonable doubt," in this context, does not require that the evidence be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our]

own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

Appellant was a personnelist at Cavalier Air Force Station, North Dakota, and met 1st Lt ES when she in-processed to Cavalier in January 2014. In April 2014, 1st Lt ES attended a going away-party for another lieutenant stationed at Cavalier. Appellant also attended the party. At some point in the evening, 1st Lt ES was having a conversation with Second Lieutenant (2d Lt) AH in the on-base movie theater. Appellant entered the theater, sat on the divider between the two chairs, put his arm around 1st Lt ES, and made a comment about her appearance. Appellant's actions made 1st Lt ES uncomfortable.

Later that evening, 1st Lt ES was at the Mangy Moose, the on-base bar, with 2d Lt AH and SSgt SB. Appellant approached the group and asked if they wanted to play a card game off-base. When no one responded, SSgt SB commented on the awkwardness of the situation and stated that he was going to make it more awkward. SSgt SB then grabbed Appellant's nipple. Appellant responded by saying, "Oh, this is what we're gonna do?," or words to that effect. He then stepped forward and used his hand to touch 1st Lt ES's breast through her clothing. The contact made 1st Lt ES uncomfortable. Embarrassed, 1st Lt ES turned away from Appellant to end the contact. Appellant then exited the area by rubbing the front of his clothed body, including his hips, thighs, and penis, against 1st Lt ES's back and buttocks while whispering to her, "I'll see you later," or words to that effect.

The Defense requested the military judge make special findings in this case. The military judge detailed his findings on the record and in writing. In his four-page, written findings, the military judge correctly listed the elements of the offenses Appellant was charged with committing. He compared the elements of the offenses to the evidence that had been presented. We are convinced that a reasonable factfinder could find, as the military judge articulated in this case, that all of the essential elements had been proved beyond a reasonable doubt. Moreover, after making allowances for not personally observing the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of Court