# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 38991**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Frank M. VARGAS**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 15 March 2018

————————————

*Military Judge:* Donald R. Eller, Jr.

*Approved sentence:* Dishonorable discharge, confinement for 29 years, and reduction to E-1. Sentence adjudged 18 September 2015 by GCM convened at Spangdahlem Air Base, Germany.

*For Appellant:* Colonel Jeffrey G. Palomino, USAF; Major Allen S. Abrams, USAF; Major Johnathan D. Legg, USAF.

*For Appellee:* Major Tyler B. Musselman, USAF; Major Mary Ellen Payne, USAF; Major Meredith L. Steer, USAF; Gerald R. Bruce, Esquire.

Before JOHNSON, MINK, and DENNIS, *Appellate Military Judges*.

Judge MINK delivered the opinion of the court, in which Senior Judge JOHNSON and Judge DENNIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

MINK, Judge:

A general court-martial comprised of officer and enlisted members convicted Appellant, contrary to his pleas, of two specifications of attempted abusive sexual contact, three specifications of sexual assault, two specifications of abusive sexual contact, and two specifications of assault consummated by a battery, in violation of Articles 80, 120, and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 920, 928. The adjudged and approved sentence consisted of a dishonorable discharge, 29 years of confinement, and reduction to E-1.

On appeal, Appellant raises eleven assignments of error: (1) whether, in light of *United States v. Hills,* 75 M.J. 350 (C.A.A.F. 2016), the military judge erred by instructing members that evidence of other charged sexual offenses could be considered regarding whether Appellant had a propensity to commit a particular charged offense; (2) whether the military judge abused his discretion by declining to recuse himself; (3) whether the proceedings were tainted by unremediated unlawful command influence (UCI); (4) whether the military judge abused his discretion by denying Appellant access to discovery to support Appellant's motion to dismiss the charges for UCI; (5) whether the military judge erred by failing to provide an instruction on the defense of mistake of fact as to consent concerning Specification 2 of Charge III; (6) whether there was a fatal variance with regard to Specification 1 of Charge III where the members substituted the word "injure" for the word "bite"; (7) whether the military judge erred by failing to grant Appellant's motion to compel discovery of electronic evidence; (8) whether the military judge erred by denying Appellant's motion to dismiss for multiplicity of charges; (9) whether the military judge erred by denying Appellant's motion to dismiss under Rule for Courts-Martial (R.C.M.) 917; (10) whether the evidence is legally and factually sufficient to support the findings of guilty; and (11) whether Appellant is entitled to relief based on a facially unreasonable delay during the appellate review of this case.[1]

Based on our review of the lengthy and complex record, we conclude that the military judge abused his discretion by failing to recuse himself from presiding over the trial in this case. We reach this conclusion because he was a potential witness with personal knowledge of disputed evidentiary facts concerning the proceeding, specifically knowledge regarding the removal of Lieutenant Colonel (Lt Col) CL, who was originally detailed as the military judge in Appellant's case, which was the subject matter of the alleged UCI, and because the military judge's impartiality could be reasonably questioned. Our

---

[1] Assignments of error (6), (7), (8), (9), and (10) are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

holding that the military judge was disqualified and should have recused himself in this case compels us to set aside the findings of guilt and the sentence. As a result, we do not address the remaining issues except whether Appellant is entitled to any relief for the facially unreasonable delay during the appellate review process.

## I. BACKGROUND

The facts underlying the charges in this case pertain to sexual and physical assault involving four victims. However, because those facts are not directly relevant to the recusal issue, we focus on those that pertain to the issue of recusal and the alleged UCI. The following background and statements are derived from testimony, affidavits, and the military judge's findings of fact in the record of trial.

At the time of Appellant's trial in 2015, the military judge[2] and Lt Col CL were the two military judges assigned to the European Circuit of the Air Force Trial Judiciary. The military judge was the Chief Circuit Military Judge in Europe and was Lt Col CL's immediate supervisor.

On 18 February 2015, the military judge convened an Article 39(a), UCMJ, session to address the pretrial motions filed in Appellant's case, including the Defense motion to dismiss the case based on UCI in sexual assault cases in general. At that time, trial defense counsel did not raise any issue relating to Lt Col CL, who had been initially detailed as the military judge in Appellant's case but was subsequently removed from the case, nor did trial defense counsel request to voir dire the military judge.

On 20 February 2015, prior to being detailed to Appellant's case, a Senior Defense Counsel (SDC)—one of two stationed in Europe—contacted the Chief Trial Judge of the Air Force (Chief Trial Judge) by email, requesting an interview to discuss Lt Col CL's removal from several cases in Europe involving Article 120, UCMJ, allegations, including Appellant's case. The Chief Trial Judge responded by email later that same day and declined to participate in such an interview. The Chief Trial Judge stated that the decision to remove Lt Col CL was "within our discretion, a judiciary privilege, and not something that will be discussed." The Chief Trial Judge then stated, "However, it had absolutely nothing to do with a decision, ruling, or finding in a case in which [Lt Col CL] was the judge." The Chief Trial Judge concluded the email by stating that "[r]equesting interviews with a sitting judge (or judges) is something

---

[2] All references to "the military judge" refer to the military judge who presided over Appellant's court-martial.

for which I would suggest closely reviewing our rules of professional responsibility, state bar rules, etc." The Chief Trial Judge copied the military judge, the Deputy Chief Trial Judge of the Air Force, and the Chief of the Air Force Trial Defense Division (who was also the SDC's rater and supervisor) on his email response.

After the SDC was detailed to represent Appellant, the military judge scheduled an Article 39(a) session on 2 March 2015 to address a newly-raised Defense motion for continuance. The SDC based his motion for continuance on an insufficient amount of time to prepare for trial given the number of witnesses in the case, the voluminous discovery to review, and the need to conduct further investigation and submit a supplemental motion to dismiss the charges for UCI based on an alleged effort to remove Lt Col CL from cases involving Article 120, UCMJ, allegations. In an email to the parties prior to the Article 39(a) session, the military judge stated:

> 1. Per the AF/JAT [Air Force Trial Judiciary] process, I control the detailing of the judge in Europe and, specifically, [Lt Col CL];
>
> 2. I was cc'd on an email from my Boss, [the Chief Trial Judge], to the SDC indicating some limited responses to queries about the below-mentioned items which the SDC should have in his possession; and
>
> 3. Per [Military Rule of Evidence] 605, I may provide information about docketing but cannot and will not testify as to any matters at issue.

After this Article 39(a) session, the military judge granted the motion for continuance. On 9 March 2015, Appellant's SDC submitted a motion for the military judge to recuse himself from sitting as the military judge on Appellant's case and a supplemental motion to dismiss based on UCI due to the removal of Lt Col CL as the military judge in Appellant's case.

At the next Article 39(a) session, held on 12–13 March 2015, the Defense argued that the military judge should recuse himself from Appellant's case since he was in the untenable position of having to determine whether his own actions amounted to actual or apparent UCI and he was a relevant and necessary witness in Appellant's case on the UCI issue. The Defense also argued that a reasonable person would have doubts about the military judge's impartiality and ability to determine whether his rater, the Chief Trial Judge, committed actual or apparent UCI, and that a reasonable person would have doubts about the military judge's impartiality and ability to make rulings in Appellant's case because his rater—the Chief Trial Judge—sent an email that implied Appellant's SDC may have violated a rule of professional responsibility. Under these circumstances, Appellant's SDC requested a military judge

from outside the Air Force Trial Judiciary rule on the supplemental motion to dismiss for UCI. The military judge repeatedly asked the SDC to explain what he, the military judge, may have done that could constitute UCI and how he could be a witness in Appellant's case since he could detail military judges for any reason. The SDC responded that the military judge had knowledge—in his supervisory role, separate from his role as a military judge—as to why Lt Col CL was removed from Appellant's case, and as a result, the military judge was a witness on the issue of Lt Col CL's removal.

The evidence submitted by Appellant's defense counsel in support of the the UCI and recusal motions included testimony and affidavits describing various discussions among Air Force attorneys regarding a dissatisfaction with Lt Col CL serving as a military judge in cases involving Article 120, UCMJ, allegations. The following is a summary of the evidence presented on the UCI and recusal motions:

- The dissatisfaction with Lt Col CL apparently began in June 2014 when Lt Col CL dismissed with prejudice the charges in *United States v. Bowser*, 73 M.J. 889 (A.F. Ct. Crim. App. 2014), *aff'd*, 74 M.J. 326 (C.A.A.F. 2015), after the Government—represented by one of two senior trial counsel (the STC) stationed in Europe—defied a court order to disclose trial counsel's witness interview notes for an in camera review following defense claims of a discovery violation.

- After Lt Col CL's decision in *Bowser*, the STC and one of the two special victims' counsel (the SVC) stationed at Ramstein Air Base (AB), Germany, began to discuss ways to prevent Lt Col CL from hearing cases involving Article 120, UCMJ, allegations, or to have him removed from the bench entirely. The STC and the SVC had these discussions with each other and related discussions with other individuals within the Air Force Judge Advocate General's (JAG) Corps, including the Third Air Force (3 AF) Staff Judge Advocate (SJA), the 31st Fighter Wing (31 FW) SJA, Air Force Government Trial and Appellate Counsel Division (JAJG) personnel, United States Air Forces in Europe Office of the SJA (USAFE/JA) personnel, and the Air Force Associate Chief of the SVC Division. Following a visit by the 3 AF SJA to the Ramstein SVC office in July 2014, the SVC asked the other Ramstein special victims' counsel, who was then an active duty Captain (hereinafter the "former SVC"), "not to discuss or mention this meeting as it could be improper UCI, or words to that effect, and [the SVC] didn't want defense or others to know there [was] a possible concerted effort to try and get Lt Col [CL] off the bench through 'loss of confidence.'"

- Discussions about the removal of Lt Col CL from cases involving Article 120, UCMJ, allegations continued in August 2014 after Lt Col CL was appointed as the Article 32, UCMJ, investigating officer (IO) in the case of *United States v. Miller* at Aviano AB, Italy. The STC and the SVC planned to request Lt Col CL recuse himself as the IO in *Miller*. According to the former SVC, the SVC said, "[The 31 FW SJA], JAJG, USAFE/JA, and 3 AF [Office of the SJA] were all involved in the decision to get Judge [CL] kicked off that Article 32, but ultimately decided that [the SVC] should submit her memorandum alone so 'there wouldn't be UCI issues in the case down the line' with having the government request the IO to recuse himself." Eventually, the SVC elected not to submit the memorandum requesting that Lt Col CL recuse himself as the IO in the *Miller* case. However, the effort to get Lt Col CL removed as the IO was subsequently the subject of a motion to dismiss for UCI in the *Miller* case.

- On 7 October 2014, the charges against Appellant were referred to a general court-martial. On 17 October 2014, Appellant's case was docketed for trial with Lt Col CL detailed as the military judge. The case was set for arraignment and motions on 18 February 2015 with trial to begin on 9 March 2015. On 20 October 2014, Lt Col CL sent out a scheduling order.

- In late October/early November 2014, Lt Col CL served as the trial judge in the case of *United States v. Jay* at Ramstein AB, Germany. The military judge was present during at least some portion of that court-martial for the purpose of observing Lt Col CL in court. Lt Col CL acquitted the accused in *Jay* of three specifications of sexual assault in violation of Article 120, UCMJ, but convicted the accused of three specifications of assault consummated by a battery. Lt Col CL sentenced the accused to two days of confinement and a reduction in rank from E-5 to E-4, and later made a recommendation for clemency from the bench that the convening authority set aside the court-martial conviction and impose nonjudicial punishment.

- On 25 November 2014, Lt Col CL was removed from four cases involving Article 120, UCMJ, allegations, including Appellant's case. The military judge detailed himself to three of the cases, including Appellant's case, and the Chief Trial Judge detailed himself to the fourth case. Lt Col CL remained detailed to one case involving at least one Article 120, UCMJ, allegation, in which he had already made pretrial rulings.

After hearing the evidence and the argument of counsel, the military judge declined to recuse himself, making extensive findings of fact on the record and specifically stating that the "Defense presented no evidence that the substance of the conversations between [the STC], [the SVC], and [the former SVC], or any other judge advocate within Third Air Force, USAFE, JAJG, or the SVC community, was transmitted to [the Chief Trial Judge] or anyone in the trial judiciary." Relying on the absence of any evidence from the Defense that anyone within the Air Force Trial Judiciary was aware of complaints about Lt Col CL's rulings, the military judge ruled that there was not sufficient evidence of UCI to shift the burden to the Government to disprove UCI had occurred. The military judge then denied the supplemental motion to dismiss the charges based on UCI relating to the alleged effort to have Lt Col CL removed from cases involving Article 120, UCMJ, allegations.

The military judge then permitted the SDC to call Lt Col CL as a witness on what was essentially a request for the military judge to reconsider his rulings on the recusal and UCI motions. Lt Col CL testified regarding conversations he had with the military judge and the Chief Trial Judge in the days following the *Jay* trial in late October/early November 2014. Lt Col CL testified that following the *Jay* trial, as he was departing the building where the courtroom was located, he was approached by the former SVC who informed Lt Col CL of the effort being made to have him removed from cases involving Article 120, UCMJ, allegations. Lt Col CL then notified his immediate supervisor—the military judge—of what the former SVC had told him about efforts to have him removed from cases involving Article 120, UCMJ, allegations.

In a post-trial affidavit submitted by Lt Col CL, he expanded on his in-court testimony. Lt Col CL stated that the day after his discussion with the former SVC following the *Jay* trial, he received an email from the former SVC containing information that the STC and the SVC were telling people Lt Col CL had a past personal experience that caused him to be biased in certain Article 120 cases. Lt Col CL denied any such personal experience had ever occurred and forwarded that information to the military judge in some form. Lt Col CL stated that a day or two after he first informed the military judge about the alleged removal effort, the military judge informed Lt Col CL he was being removed from most of the cases involving Article 120, UCMJ, allegations to which he was then detailed. Lt Col CL recalled having several discussions about this issue and speaking independently "for at least a few hours" with both the military judge and the Chief Trial Judge prior to the re-detailing letters being issued. Lt Col CL stated that he was told the reason for his removal from the cases involving Article 120, UCMJ, allegations was "due to [his] judicial temperament and lack of courtesy, as demonstrated in 3 cases: *US v. Jay*, *US v. Bowser*, and *US v. Miller*." During his in-court testimony, Lt Col CL

stated he "maintained a full calendar of other cases so [his removal from certain cases] was specific to [Article] 120 cases."

Although the military judge's oral ruling on the recusal and UCI motions was announced prior to Lt Col CL's in-court testimony, his written ruling was issued after Lt Col CL testified. In his written ruling (unlike in his oral ruling), the military judge concluded, based on Lt Col CL's testimony, that the Defense had now produced some evidence of UCI and shifted the burden of proof on the UCI motion to the Government. The Government presented no additional evidence on the UCI issue, but the military judge, after hearing further argument from the parties, ruled that he was convinced beyond a reasonable doubt that the evidence introduced before the court did not constitute UCI. He further held that there was no evidence of actual or apparent UCI by anyone in the Air Force Trial Judiciary, and even if there had been UCI, it had no effect on the processing of Appellant's case.

As noted above, the military judge made extensive written findings of fact and conclusions of law. The military judge found that the removal of Lt Col CL from Appellant's case occurred as an exercise of discretion within the judiciary and that the removal was not done based on any decision, ruling, or finding made by Lt Col CL. The military judge determined the circumstances were "nowhere near the situation" where he would have to decide whether he himself "had engaged in misconduct" and that he was not a necessary witness because "the factual background was not in dispute based on the evidence presented thus far." The military judge further found that the Defense concerns about his ability to evaluate the actions of the Chief Trial Judge were "unfounded" and that all of the issues in total did not warrant his recusal. Ultimately, the military judge concluded that based on "the evidence presented and in light of the circumstances, any reasonable person with the requisite knowledge of the evidence at hand would have great confidence in [his] impartiality and ability to preside over the remainder of the case."

## II. DISCUSSION

### A. Recusal of the Military Judge

Appellant asserts that the military judge abused his discretion by failing to recuse himself in this case and that his failure to do so would cause a reasonable observer to question the fairness of Appellant's trial. We agree.

#### 1. Law

We review a military judge's decision on recusal for abuse of discretion. *United States v. McIlwain*, 66 M.J. 312, 314 (C.A.A.F. 2008) (citing *United States v. Butcher*, 56 M.J. 87, 90 (C.A.A.F. 2001)).

Rule for Courts-Martial (R.C.M.) 902 outlines the circumstances for disqualification of a military judge:

> (a) *In general.* Except as provided in subsection (e) of this rule, a military judge shall disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned.

> (b) Specific grounds. A military judge shall also disqualify himself or herself in the following circumstances:

> > (1) Where the military judge has … personal knowledge of disputed evidentiary facts concerning the proceeding.

> > ….

> > (3) Where the military judge has been or will be a witness in the same case ….

> > ….

"'[W]hen a military judge's impartiality is challenged on appeal, the test is whether, taken as a whole in the context of this trial, a court-martial's legality, fairness, and impartiality were put into doubt' by the military judge's actions." *United States v. Martinez*, 70 M.J. 154, 157 (C.A.A.F. 2011) (alteration in original) (quoting *United States v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000)). The appearance of impartiality is reviewed on appeal objectively and tested under the standard of, "[A]ny conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification." *United States v. Kincheloe*, 14 M.J. 40, 50 (C.M.A. 1982) (internal quotation marks and citation omitted). "Whether the military judge should disqualify [him]self is viewed objectively, and is 'assessed not in the mind of the military judge [him]self, but rather in the mind of a reasonable man . . . who has knowledge of all the facts.'" *McIlwain*, 66 M.J. at 314 (quoting *Wright*, 52 M.J. at 141).

### 2. Analysis

#### a. Specific Grounds for Recusal under R.C.M. 902(b)

It is apparent from the record of trial that the military judge had personal knowledge of the circumstances of the removal of Lt Col CL as the original military judge in Appellant's case. In light of the alleged effort made to remove Lt Col CL as a military judge entirely, or at least from cases involving Article 120, UCMJ, allegations, the reason for his removal from Appellant's case was a disputed fact. Since the military judge was the person who removed Lt Col

CL from Appellant's case, the military judge was obviously a potential witness on the issue of the alleged UCI, regarding his own involvement with the removal decision as well as any knowledge he had regarding the Chief Trial Judge's role in the removal. Consequently, the military judge was placed in the position of having to impartially determine whether he or his immediate supervisor, the Chief Trial Judge, had engaged in UCI or had been unlawfully influenced by the alleged removal effort.

It is also apparent that the military judge had personal knowledge of the alleged effort to remove Lt Col CL from cases involving Article 120, UCMJ, allegations, before removing Lt Col CL from Appellant's case. Whether the military judge, Chief Trial Judge, or anyone in the Air Force Trial Judiciary had been made aware of the alleged removal effort was also a disputed fact. The military judge initially ruled on the UCI and recusal motions based on his finding that no evidence had been presented as to whether anyone in the Air Force Trial Judiciary had been made aware of the alleged effort to have Lt Col CL removed from cases involving Article 120, UCMJ, allegations. Yet the military judge himself had such evidence in the form of his personal knowledge.

The evidence presented by the Defense to the trial court on the UCI motion clearly established that discussions were occurring regarding an effort to have Lt Col CL removed from the trial bench or at least from cases involving Article 120, UCMJ, allegations based on dissatisfaction by some about Lt Col CL's actions in prior cases involving Article 120, UCMJ, allegations. The extent of those discussions or effort was not completely established, but what is clear from the record is that after Lt Col CL himself notified the military judge of the information he had learned about discussions pertaining to the alleged effort to have him removed, Lt Col CL was, in fact, removed from four cases involving Article 120, UCMJ, allegations by the military judge. The reason or reasons for Lt Col CL's removal are not clear, despite what Lt Col CL had been told about why he was removed, but it is only reasonable to conclude that the military judge knew precisely why Lt Col CL was removed from Appellant's case.

The military judge's initial denial of Appellant's UCI motion is particularly troubling because the military judge claimed to base his decision on the absence of any evidence having been presented to the court that the effort to remove Lt Col CL had ever been communicated to anyone in the Air Force Trial Judiciary. Lt Col CL's subsequent testimony made it clear that he had discussed the removal effort with both the military judge and the Chief Trial Judge prior to Lt Col CL's removal from the four Article 120 cases, including Appellant's case. Consequently, it is obvious that when the military judge initially ruled on the UCI motion, he knew that he and the Chief Trial Judge had been informed of the removal effort, at least by Lt Col CL, but the military

judge chose not to inform the parties of his knowledge so that they could decide how to proceed. Moreover, the fact that the military judge then decided to shift the burden of proof to the Government on the UCI motion as a result of Lt Col CL's testimony emphasizes the criticality of this information of which the military judge was already aware. Even after the burden of proof was shifted, the Government produced no additional evidence and yet the military judge again denied the UCI motion while indicating the absence of facts in dispute. Any doubt about the military judge's status as a potential witness was erased when the military judge, in essence, testified from the bench as to his personal knowledge that the removal of Lt Col CL from Appellant's case was not due to Lt Col CL's rulings or decisions in any case. We find that the military judge abused his discretion by failing to recuse himself once it was apparent that he was a potential witness with personal knowledge of disputed evidentiary facts, as required by R.C.M. 902(b).

### b. Lack of Impartiality Under R.C.M. 902(a)

It is equally apparent to this court that to allow the findings in this case to stand—when the military judge should have recused himself—runs the risk of undermining the public's confidence in the military justice process. We are not persuaded that the statements of the military judge eliminate concerns that could be created in the mind of a reasonable observer about the fairness of Appellant's trial or about a lack of impartiality on the part of the military judge.

Taken as a whole in the context of this trial, we find that the appearance of the court-martial's impartiality was put into doubt by the military judge's actions. Against the backdrop of the alleged effort being made by some to remove a qualified military judge from a particular category of cases based on his unpopular actions in such cases, we find that a reasonable person observing Appellant's court-martial would have substantial reason to question the military judge's impartiality given his role in removing Lt Col CL from Appellant's case and in having to assess whether he or the Chief Trial Judge had acted improperly in doing so. We also find that such doubts spring from the military judge's status as a witness in this case, having knowledge of the disputed evidentiary facts about Lt Col CL's removal from the case and the potential influence of the alleged removal effort. As a result, we find that the military judge abused his discretion by failing to recuse himself under R.C.M. 902(a).

We decide only that the military judge's decision on his recusal was incorrect. Even though we recognize the seriousness of the alleged UCI, our decision in this case does not address whether actual or apparent UCI occurred. The UCI issue should have been litigated at the trial level and decided by a neutral and detached military judge prior to any appellate review of that issue by this court. It was not. Because we find the military judge should not have presided

at Appellant's trial, our decision goes no further than the recusal issue with the sole exception of the timeliness of appellate review. Our decision is limited to the particular facts of the recusal issue and does not extend to any other matter, including the scope or application of the judicial privilege. We simply hold that based on the facts before us, where there was substantial evidence of an alleged concerted effort to have a military judge removed based on disagreement with his actions in a certain class of cases, and the subsequent removal of that military judge from several cases within that class, Appellant's UCI motion required an arbiter who was neutral and detached, both apparently and in fact, and the military judge did not qualify as such.

### c. Remedy

When a military judge should have recused himself, no particular remedy is mandated, but the United States Court of Appeals for the Armed Forces (CAAF) has previously applied a three-part test to decide whether reversal of the convictions is appropriate. *See United States v. Quintanilla*, 56 M.J. 37, 80–81 (C.A.A.F. 2001) (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 862–64 (1988)). This test requires consideration of "the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Id.* at 81 (quoting *Liljeberg*, 486 U.S. at 864).

In determining an appropriate remedy in this case, we considered the fact that the military judge's decision on recusal was directly related to the issue of the alleged UCI. Both were threshold questions decided by the military judge prior to the trial on the merits and could cast doubt in the mind of the public on the fairness of other rulings by the military judge in Appellant's case. Applying the *Quintanilla* test and considering our holding that the military judge should have recused himself, we conclude that the appropriate remedy in this case to avoid undermining the public's confidence in the military judicial process is to set aside the findings of guilt and the sentence and authorize a rehearing.

## B. Delay in Completing Appellate Review

Appellant has asserted a right to timely review and appeal. Appellant's case was docketed with this court on 24 February 2016 and appellate review was not completed within 18 months.

### 1. Law

We review de novo whether Appellant has been denied the due process right to a speedy post-trial review and appeal. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). In *Moreno*, the CAAF established a pre-

sumption of unreasonable post-trial delay that requires a due process review when the Court of Criminal Appeals does not complete appellate review and issue a decision within 18 months of docketing. *Id.*

If there is a *Moreno*-based presumption of unreasonable delay or an otherwise facially unreasonable delay, we examine the claim under the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135. *Moreno* identified three types of prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of ability to present a defense at a rehearing. *Id.* at 138–39.

"We analyze each factor and make a determination as to whether that factor favors the Government or [Appellant]." *Id.* at 136. Then, we balance our analysis of the factors to determine whether a due process violation occurred. *Id.*; *see also Barker*, 407 U.S. at 533 ("Courts must still engage in a difficult and sensitive balancing process."). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

### 2. Analysis

This is a complicated case and the charged offenses are very serious. Sixteen motions were filed and the trial spanned 15 days. The record of trial is comprised of 16 volumes, including 1,808 pages of transcript, 26 prosecution exhibits, 13 defense exhibits, and 130 appellate exhibits. The amount of time required by Appellant's defense counsel to effectively and professionally review the trial proceedings and assert errors was understandably much more than would be required in a simpler case. Likewise, the Government reasonably required more time than is typical to fully analyze and effectively and professionally respond to Appellant's brief. Appellant sought and received eight enlargements of time to file his brief and assignments of error, accounting for a total of 404 days after the docketing of the case with this court. The Government sought and received two 30-day enlargements of time to file its answer, accounting for a total of 91 days. The court has taken approximately seven months to review the record of trial, consider the briefs of counsel, and render this decision.

Appellant, who remains in confinement, has not pointed to any prejudice for the presumptively unreasonable delay except for speculation that

if he is successful on his appeal that his incarceration may have been oppressive. We have carefully considered whether this delay amounted to a violation of Appellant's due process right to timely post-trial review. Considering all of the *Barker* factors and the circumstances of this case, we conclude that the time taken to complete review of Appellant's case is not unreasonable. Accordingly, we find no due process violation. *See Moreno*, 63 M.J. at 143.

We recognize our authority to grant relief, when warranted, even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F 2002); *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016); *United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F 2002). In light of our disposition and the particular circumstances of Appellant's case, we find that no extraordinary exercise of our Article 66, UCMJ, authority to grant additional relief is warranted. 10 U.S.C. § 866.

### III. CONCLUSION

The findings of guilt and the sentence are **SET ASIDE**. A rehearing is authorized. Article 66, UCMJ, 10 U.S.C. § 866.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

14